[Civ. No. 34067. Fourth Dist., Div. Three. May 31, 1985.]

MOSES BROWN, Plaintiff and Appellant, v.
COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF
SANTA ANA, Defendant and Respondent.

COUNSEL

David L. Llewellyn, Jr., for Plaintiff and Appellant.

Stradling, Yocca, Carlson & Rauth, David R. McEwen and E. Kurt Yeager for Defendant and Respondent.

OPINION

**CROSBY, J.**—This taxpayer action challenges the issuance of $16.5 million in tax allocation refunding bonds by the Santa Ana Community Redevelopment Agency in 1983. The central question presented is whether tax increment revenues and tax allocation bonds received and issued by community redevelopment agencies are subject to article XIII B of the California Constitution, an initiative measure passed by the electorate in 1979, entitled the "Government Spending Limitation." The Legislature has decided not, and we concur.

I

 Redevelopment agencies finance real property improvements in blighted areas. Pursuant to article XVI, section 16 of the Constitution, these agencies are authorized to use tax increment revenues for redevelopment projects. The constitutional mandate has been implemented through the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.).

 The Community Redevelopment Law authorizes several methods of financing; one is the issuance of tax allocation bonds. Tax increment reve-

nue, the increase in annual property taxes attributable to redevelopment improvements, provides the security for tax allocation bonds. Tax increment revenues are computed as follows: The real property within a redevelopment project area is assessed in the year the redevelopment plan is adopted. Typically, after redevelopment, property values in the project area increase. The taxing agencies (e.g., city, county, school or special district) keep the tax revenues attributable to the original assessed value and pass the portion of the assessed property value which exceeds the original assessment on to the redevelopment agency. (Health & Saf. Code, §§ 33640, 33641, 33670, 33675). In short, tax increment financing permits a redevelopment agency to take advantage of increased property tax revenues in the project areas without an increase in the tax rate. This scheme for redevelopment financing has been a part of the California Constitution since 1952. (Cal. Const., art. XVI, § 16.)

■ Article XIII B (Prop. 4, Nov. 1979, informally yclept the Gann initiative) was designed to restrict the power of government entities to increase spending or taxes or to incur debt in the absence of voter approval. Appellant correctly explains, "the unmistakable purpose of [a]rticle XIII B is to hold government expenditures at their 1978-79 level, adjusted for changes in the cost of living, population and transfers of responsibilities from one entity of government to another."

Be that as it may, implementation of the goal is less than clear in the case of community redevelopment agencies; article XIII B does not expressly refer to article XVI, section 16 of the Constitution, tax increment financing, or redevelopment agencies. ■ Moreover, community redevelopment agencies are unique in that they receive tax revenues but are not themselves taxing agencies. ■ Consequently, despite the sweeping language of article XIII B, the question quickly arose as to whether the measure was applicable to tax increment financing. To resolve the ambiguity (and to check a downward spiral in the ratings of California redevelopment bonds), the Legislature enacted Health and Safety Code section 33678 as an urgency measure in 1980.

There, the Legislature concluded the wide reach of the Gann initiative falls short of covering the raising or spending of tax increment revenues by redevelopment agencies (Health & Saf. Code, § 33670, subd. (b)). Subdivision (a) of section 33678 provides, "This section implements and fulfills the intent . . . of [a]rticle XIII B and Section 16 of [a]rticle XVI of the California Constitution. The allocation and payment to an agency of the portion of taxes specified in subdivision (b) of Section 33670 for the purpose of paying principal of, or interest on . . . indebtedness incurred for redevelopment activity . . . shall not be deemed the receipt by an agency of

proceeds of taxes levied by or on behalf of the agency within the meaning of or for the purposes of [a]rticle XIII B . . . nor shall such portion of taxes be deemed receipt of proceeds of taxes by, or an appropriation subject to limitation of, any other public body within the meaning or for purposes of [a]rticle XIII B . . . or any statutory provision enacted in implementation of [a]rticle XIII B. *The allocation and payment to an agency of such portion of taxes shall not be deemed the appropriation by a redevelopment agency of proceeds of taxes levied by or on behalf of a redevelopment agency within the meaning or for purposes of [a]rticle XIII B of the California Constitution.*" (Italics added.)

## II

In March 1983, the Santa Ana Community Redevelopment Agency authorized a $16.5 million tax allocation bond issue to repay $13.5 million in previously issued bonds and generate additional funds for new projects. A sale to the lowest bidder was approved by the agency, and the Santa Ana City Council then approved issuance of the bonds.

This action challenging the validity of the bond issue and the constitutionality of Health and Safety Code section 33678 followed. It was claimed the proposed bond issue exceeded the agency's appropriations limit and required voter approval under article XIII B and that Health and Safety Code section 33678 is unconstitutional.

The agency demurred, but at the hearing both sides stipulated the matter would be treated as a motion for summary judgment. The superior court ruled for the defendant, holding, "Defendant Agency is exempt from the restricting provisions of [a]rticle XIII B because of [a]rticle XVI, Section 16, and the legislative reconciliation of the apparent conflict, found in Health and Safety Code section 33678."

 Appellant maintains the funds the agency receives from tax increment financing constitute "proceeds of taxes" subject to article XIII B appropriations limits. Detailing an elaborate construction of the article XIII B scheme, he argues the proposed bond issue, as post-January 1, 1979 debt, cannot exceed the agency's base year appropriations limits without voter approval (Cal. Const., art. XIII B, §§ 4, 8, subd. (g), 9, subd. (a)).[1] He

---

[1]Section 4 provides, "The appropriations limit imposed on any new or existing entity of government by this Article may be established or changed by the electors of such entity, subject to and in conformity with constitutional and statutory voting requirements. The duration of any such change shall be as determined by said electors, but shall in no event exceed four years from the most recent vote of said electors creating or continuing such

characterizes Health and Safety Code section 33678 as an "unconstitutional attempt to exempt community redevelopment agencies from the require- ments of [a]rticle XIII B" and claims only the judiciary, not the Legislature, can interpret constitutional provisions. We disagree.

As a general rule, legislative enactments are presumed to be constitution- al; if "more than one reasonable meaning exists, it is our duty to accept that chosen by the Legislature. [Citations.]" (*Lundberg* v. *County of Ala- meda* (1956) 46 Cal.2d 644, 652 [298 P.2d 1].) And "apparent ambiguities frequently may be resolved by the contemporaneous construction of the Legislature . . . ." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) Or, put another way, " 'where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. When the Legisla- ture has once construed the [C]onstitution, for the courts then to place a different construction upon it means that they must declare void the action of the Legislature. It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the [C]onstitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution. This is elementary.' " (*San Francisco* v. *Industrial Acc. Com.* (1920) 183 Cal. 273, 279 [191 P. 26], quoted in *Methodist Hosp. of Sac- ramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161].)

■ In a more recent case which deals with the Legislature's interpreta- tion of article XIII A, section 2, the sister provision of the article we ex- amine today, the First District restated the rule: "For the reasons hereafter set forth, we find, *first,* that the constitutional provisions are intrinsically ambiguous as to when application of the inflation factor commences; *sec- ond,* that the effects of the legislative interpretation are not manifestly in- imical to the constitutional design; *third,* that the uncertain language of the [C]onstitution is not clarified by extrinsic evidence of the intent of the vot- ers; and, *fourth,* that in these circumstances the applicable canons of con-

---

change."

Section 9, subdivision (a) indicates, "appropriations subject to limitation" does not in- clude "debt service"; section 8, subdivision (g) defines "debt service" as "appropriations required to pay the cost of interest and redemption charges, including the funding of any reserve or sinking fund required in connection therewith, on indebtedness existing or legally authorized as of January 1, 1979 or on bonded indebtedness thereafter approved according to law by a vote of the electors of the issuing entity voting in an election for such purpose."

struction compel us to defer to the legislative interpretation." (*Armstrong v. County of San Mateo* (1983) 146 Cal.App.3d 597, 605 [194 Cal.Rptr. 294].) Applying the preceding principles, we find little room to second-guess the Legislature's interpretation of article XIII B.

Despite appellant's protestations to the contrary, article XIII B *is* vague and uncertain as applied to the funding methods of redevelopment agencies in our view. The voters' pamphlets and arguments presented to the electorate were silent on the question. Consequently, lacking guidance in the form of extrinsic evidence of the electors' intent on the matter, our task is merely to determine whether the Legislature's interpretation is "manifestly inimical to the constitutional design." We think not.

The legislative history of Health and Safety Code section 33678 discloses, "[After] adoption of [a]rticle XIII B . . . the repayment of millions of dollars of tax allocation obligations incurred by redevelopment agencies [became] clouded by uncertainty, and ratings of a large number of issues of tax allocation bonds issued by redevelopment agencies [were] suspended." (Stats. 1980, ch. 1342, § 4, p. 4752.) Consequently, the Legislature studied the matter and determined "the receipt by redevelopment agencies of taxes allocated pursuant to [a]rticle XVI, [s]ection 16 . . . for the purposes contemplated by the voters in adoption of the provision . . . *does not constitute the receipt of taxes by or the payment of the proceeds of taxes* to redevelopment agencies . . . within the meaning of or for the purposes of [a]rticle XIII B of the California Constitution." (*Ibid.*, italics added.)

Health and Safety Code section 33678 is a legislative clarification of the status of tax allocation financing after article XIII B. That determination is not arbitrary or unreasonable, nor is it repugnant to the literal language of article XIII B. (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 583 [131 Cal.Rptr. 361, 551 P.2d 1193].) Thus, we have no basis to substitute our judgment or to question the constitutionality of the section.

Judgment affirmed. Respondent is entitled to costs on appeal.

Trotter, P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 1985.