[No. B057768. Second Dist., Div. Three. June 9, 1993.]

ARCADIA REDEVELOPMENT AGENCY et al., Petitioners, v.
DANIEL O. IKEMOTO, as Auditor-Controller, etc., et al., Respondents.

COUNSEL

Kane, Ballmer & Berkman, Murray O. Kane, R. Bruce Tepper, Jr., Edwin Freston, Joseph Pannone and Alexis S. M. Chiu for Petitioners.

Richards, Watson & Gershon, Glenn R. Watson, William L. Strausz, Michael G. Colantuono, McDonough, Holland & Allen, Richard W. Brandt, and Craig Labadie as Amici Curiae on behalf of Petitioners.

De Witt W. Clinton, County Counsel (Los Angeles), Frederick R. Bennett and Lawrence B. Launer, Assistant County Counsel, Albert Ramseyer, Deputy County Counsel, Steven M. Woodside, County Counsel (Santa Clara), Karen E. Heggie and Kim Steinhardt, Deputy County Counsel, Terry C. Andrus, County Counsel (Orange), Thomas C. Agin and David Beales, Deputy County Counsel, William C. Katzenstein, County Counsel (Riverside), and Robert M. Pepper, Deputy County Counsel, for Respondents.

OPINION

HINZ, J.—

### INTRODUCTION

Concluding that the Legislature violated no constitutional or statutory provision in enacting section 97 and related sections of the California Revenue and Taxation Code, we deny a writ of mandamus challenging the implementation of that statute.

On April 11, 1991, in the California Supreme Court, petitioners filed a petition for writ of mandate and requested an immediate stay. Petitioners are

redevelopment agencies of the following cities: Arcadia; Culver City; Lynwood; Moreno Valley; Redondo Beach; San Jose; Santa Ana; and Santa Clara. Respondents are: Daniel O. Ikemoto (Los Angeles County Auditor-Controller); Steven E. Lewis (Orange County Auditor-Controller); William L. Parsons (Santa Clara County Auditor-Controller); and Anthony Bellanca (Riverside County Auditor-Controller).

On April 17, 1991, the California Supreme Court transferred the matter to the Court of Appeal, Second Appellate District. On May 6, 1991, finding good cause for review of the issue raised, this appellate division ordered respondents to show cause why the requested relief should not issue, but denied the request for a stay.

On May 23, 1991, this court granted an application for permission to file an amicus curiae brief in support of the petition for writ of mandate from redevelopment agencies of the following cities: Carson; Palm Desert; Blythe; Seal Beach; and Cudahy. On June 18, 1991, this court granted an application for permission to file an amicus curiae brief in support of the petition from redevelopment agencies of the following cities: Long Beach; Alameda; Concord; El Cerrito; Hercules; Pinole; Pittsburg; Richmond; San Pablo; San Ramon; and Walnut Creek. On July 12, 1991, this court granted an application to file an amicus curiae brief in support of the petition from redevelopment agencies of the following cities: Adelanto, Blythe; Carson; Cudahy; Manteca; Palm Desert; Seal Beach; and South Gate.

Following this court's filing of its opinion on August 8, 1991, the California Supreme Court granted review on November 14, 1991. The Governor approved Senate Bill No. 1559 (Stats. 1992, ch. 697) on September 14, 1992, and the bill was filed with the Secretary of State on September 15, 1992. On December 31, 1992, the California Supreme Court transferred the case to the Court of Appeal, Second Appellate District, Division Three, with directions to vacate its decision and to reconsider its ruling on Revenue and Taxation Code section 97, subdivision (f) in light of Senate Bill No. 1559. In response to this court's request, the parties have submitted additional briefs.

FACTS

As no trier of fact has made factual findings, this factual statement is derived from allegations in pleadings submitted by the parties.

*Petitioners' Allegations:*

Petitioners make the following allegations. Petitioners, as redevelopment agencies of several cities, are public bodies established pursuant to the

California Community Redevelopment Law, Health and Safety Code section 33000 et seq. That scheme vests petitioners with responsibility for carrying out various governmental functions.

Respondent counties and auditor-controllers collect property taxes on behalf of local taxing agencies within their jurisdictions. Through their officers, the counties act as agents for local public taxing entities insofar as the counties collect and hold funds which, by law, belong to local public entities.

On July 31, 1990, the California Legislature and the Governor enacted chapter 466. On January 15, 1991, Los Angeles County sent petitioners invoices demanding payment of property tax administrative costs pursuant to chapter 466:

a. Arcadia Redevelopment Agency: $34,529.07;

b. Culver City Redevelopment Agency: $317,179.72;

c. Lynwood Redevelopment Agency: $19,769.20;

d. Redondo Beach Redevelopment Agency: $75,366.87

These four petitioners responded to the invoices by denying liability and disputing the claims. Los Angeles County sent out delinquency notices on February 22, 1991, and sent final notices on March 15, 1991. The final notices state: "On April 16, 1991, we will retain/withhold any unpaid amount due on this delinquent invoice against tax revenue to be distributed to your jurisdiction." The final notices described the amount as: "1989-90 property tax administrative cost payable in fiscal year 1990-91 in accordance with SB2557 (Chapter 466 of the Statutes of 1990)."

Similar invoices were sent by Riverside County to the Moreno Valley Community Redevelopment Agency for $46,901; by Santa Clara County to the Santa Clara Redevelopment Agency for $163,891 and to the San Jose Redevelopment Agency for $882,071; and by Orange County to the Santa Ana Community Redevelopment Agency for $318,282.07. These four city redevelopment agencies disputed the invoices, asserting the demand was inapplicable, unlawful, and unconstitutional.

Petitioners allege that the respondents' actions are illegal for the following reasons:

a. Respondents lack legal authority to assess the invoiced amounts.

b. Because none of the petitioners is a local agency or a taxing entity under California law, chapter 466 does not apply to them on its face.

c. The amount respondents claim from petitioners is not debt within California Constitution, article XVI, section 16, and the California Redevelopment Law, and cannot be debt of a redevelopment agency for several reasons. Counties are required to pay the entire tax increment to redevelopment agencies, which amount has not been incurred by redevelopment agencies in furtherance of redevelopment. The amount respondents seek bears no rational relationship to the actual cost to respondents of apportioning the tax increment as required by article XVI, section 16 and the Community Redevelopment Law, making the formula in chapter 466 unconstitutional and a violation of the Community Redevelopment Law.

d. Although respondents' notices to petitioners threatening to withhold the tax increment purport to act pursuant to Government Code section 907, respondents have failed to use certified mail as required by section 907.

Pursuant to section 907, petitioners have submitted a written dispute to respondents, which requires respondents to use means other than offset to recover charges respondents claim. Petitioners have thereby exhausted all administrative remedies available to them, but respondents continue to threaten to withhold the tax increment.

If respondents are not forced to perform their legal duty and allocate petitioners all tax increments to which petitioners are entitled, it will jeopardize petitioners' ability to meet principal and interest payments on debt, destroy petitioners' creditworthiness, and will impair their ability to carry out their redevelopment responsibilities.

Petitioners have no speedy or adequate legal remedy. If respondents withhold the invoiced amounts, petitioners must use other funds to pay their obligations. In some instances, petitioners will not be able to meet their obligations, impairing their credit and their ability to proceed with urgently needed governmental projects, which projects may not be feasible at a later time.

The petition prays as follows. First, for an order issuing an immediate stay of all respondents' proceedings to collect or to offset any amount from any tax increment to which petitioners would otherwise be entitled which are claimed to be due pursuant to chapter 466. Second, that this court issue an alternative writ of mandate, and after hearing, a peremptory writ of mandate commanding respondents to annul, vacate, and set aside their actions against

petitioners purporting to impose and offset a property tax administrative fee. Third, that this court order respondents to return to petitioners any sums recovered by offset or otherwise. Fourth, that this court declare chapter 466 does not authorize any property tax administrative fee to be collected from redevelopment agencies, or if it does so, it is to that extent unconstitutional and void.

*Respondents' Allegations:*

Respondents make the following allegations in their opposition to the petition filed May 17, 1991. Respondents urge that entities enjoying the fruits of county-provided tax services should bear their costs. That principle underlies the fees authorized by chapter 466, Revenue and Taxation Code section 97. The amendment arose during a state budget crisis that forced the Legislature to balance fiscal priorities. Invalidating the fees, respondents allege, would cause "massive dislocations for County government finance."

For the 1990-1991 fiscal year, the Legislature reduced direct financial assistance to counties by $389.5 million. That reduction comprised reductions of state funding to counties for indigent medical services ($175 million); mental health ($53 million); child welfare services ($54 million); county justice system subvention ($33 million); trial court funding ($460.7 million) (*sic*); and indigent defense ($13 million). State assistance to respondent Los Angeles County, for instance, was reduced by $137.9 million.

Because the state requires counties to provide for these and other programs, the Legislature provided alternative means by which the counties could raise revenue, including enactment of Revenue and Taxation Code section 97. That section permits recovery of previously unreimbursed costs for administering general property taxes under California Constitution, Article XIII A, as enacted by the Legislature.

As a result of the 1990 budget crisis, Riverside County lost approximately $16 million, affecting similar programs, and noted that the property tax administration fee only covered the actual cost of the collection of the fee along with a statutory overhead charge.

ISSUES

Petitioners contend that:

1. Respondents' failure to pay redevelopment agencies the full tax increment, without offset, violates the tax increment scheme of the California Constitution and the California Community Redevelopment Law.

2. Respondents have failed to follow the provisions of Government Code section 907, which protect governmental agencies from the risk of having their obligations placed in default.

3. Revenue and Taxation Code section 97, as enacted by chapter 466, does not apply to redevelopment agencies.

### DISCUSSION

1. *Violation of California Constitution and the Community Redevelopment Law*

Petitioners point out that although redevelopment agencies may accept funding from any public or private source, borrow money, or issue bonds, they may not levy a tax to carry out redevelopment plans. (Health & Saf. Code, §§ 33600, 33601, 33640; *Community Redevelopment Agency* v. *Bloodgood* (1986) 182 Cal.App.3d 342, 344 [226 Cal.Rptr. 924]; *Brown* v. *Community Redevelopment Agency* (1985) 168 Cal.App.3d 1014 [214 Cal.Rptr. 626].) Borrowing has become the primary funding method. The "tax increment" provides the main source of funds to repay loans. ▆▆▆ ▆▆ An agency receives such funds from governmental entities which the California Constitution article XVI, section 16, and Health and Safety Code sections 33670-33677 authorize to levy a tax on property within a project area.[1]

The redevelopment agencies argue that the California Constitution protects their funding from impermissible reduction of redevelopment agencies' mandated payments. Article XVI, section 16 (section 16), however, makes two alternative statements about how to tax redevelopment agencies' property.

In its first paragraph, section 16 states: "All property in a redevelopment project established under the Community Redevelopment Law . . . shall be taxed in proportion to its value as provided in Section 1 of this article, and those taxes . . . shall be levied and collected as other taxes are levied and collected by the respective taxing agencies." This mandatory language, reflected by the auxiliary verb "shall," indicates that no distinction shall be

---

[1] In "tax increment financing," explains *Redevelopment Agency* v. *County of San Bernardino* (1978) 21 Cal.3d 255, 259 [145 Cal.Rptr. 886, 578 P.2d 133], ". . . if, after a redevelopment project has been approved, the *assessed valuation of taxable property* in the project increases, the taxes levied on such property in the project area are divided between the taxing agency and the redevelopment agency. The taxing agency receives the same amount of money it would have realized under the assessed valuation existing at the time the project was approved, while the additional money resulting from the rise in assessed valuation is placed in a special fund for repayment of indebtedness incurred in financing the project." (Original italics.)

made in valuing, *or in levying and collecting*, redevelopment project properties.

In its second paragraph, section 16 states: "The Legislature *may* provide that any redevelopment plan *may* contain a provision that the taxes, if any, so levied upon the taxable property in a redevelopment project each year by or for the benefit of the State of California, any city, county, city and county, district, or other public corporation (hereinafter sometimes called 'taxing agencies') . . . shall be divided . . ." according to the tax increment scheme. (Italics added.)

■ The mandatory language in the first paragraph of section 16 not only gives the Legislature the authority, but also requires the Legislature, to treat community redevelopment property like other property for purposes of levying and collecting property taxes.

The penultimate paragraph of section 16 confirms that the language in the second paragraph is permissive. "It is intended by this section to empower any redevelopment agency, city, county, or city and county under any law authorized by this section to exercise the provisions hereof separately or in combination with powers granted by the same or any other law relative to redevelopment agencies. *This section shall not affect any other law or laws relating to the same or a similar subject but is intended to authorize an alternative method of procedure governing the subject to which it refers.*" (Italics added.)

In its final sentence, section 16 states: "The Legislature shall enact those laws as may be necessary to enforce the provisions of this section." Section 16 therefore does not prevent the Legislature from altering the levying and collection of taxation on redevelopment project property in a manner consistent with which it alters the levying and collection of taxation on other property.

■ ". . . '[W]here a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. When the Legislature has once construed the constitution, for the courts then to place a different construction upon it means they must declare void the action of the Legislature. It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the constitution, a statute passed by the Legislature, unless it can be said of the statute that it

positively and certainly is opposed to the constitution. . . .' " (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161].)

Petitioners and respondents both make the same claim, that the funds at issue finance necessary and beneficial public purposes, and involve significant revenues. Such arguments may underscore the importance of the case at bench. But the Legislature, not this court, decides which of the innumerable public mouths tax revenues will feed. Barring a statutory or constitutional violation, it is not for this court to stop the Legislature if it transfers revenue from Peter to compensate Paul for the effort he expends to collect the tax. (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 624 [194 Cal.Rptr. 294].)

### 2. *Violations of Government Code Section 907*

Petitioners further claim that respondents have failed to comply with Government Code section 907. That section states:

"A local public entity, as defined in Section 900.4, may offset any delinquent amount due it for services rendered to any other local public entity. The offset may be charged, against any amount reciprocally owing, upon the giving of 30 days advance written notice, if no written dispute is received from the debtor within the 30-day notice period. Notices from the creditor or the debtor shall be made through certified mail.

"If the offset would result in the debtor's inability to meet encumbered bonded indebtedness repayments, the debtor shall so state in a written dispute within the time period stated above.

"If a dispute notice is received and the dispute is subsequently resolved in favor of the entity to whom an amount is due, interest on the principal amount from the date that amount was originally owing shall be assessed at the legal rate per annum established pursuant to Section 685.010 of the Code of Civil Procedure.

"For purposes of this section, an amount reciprocally owing includes any tax revenue collected by a local public entity for disbursement to another local public entity."

Petitioners claim respondents have failed to send notices via certified mail. Petitioners do not, however, claim actual lack of notice. Hence, respondents' notice to them substantially complied with Government Code section 907.

Petitioners also claim respondents continue to threaten to withhold in spite of the proviso that withholding may be done only if the creditor receives no written dispute from the debtor within 30-day notice period. Since petitioners claim no more than that respondents "threaten" to withhold, as distinct from actually withholding, funds pending resolution of the dispute, we perceive no violation of Government Code section 907.

3. *Does Revenue and Taxation Code Section 97 Apply to Redevelopment Agencies?*

Petitioners further argue that redevelopment agencies do not qualify as the "local jurisdictions" referred to by Revenue and Taxation Code section 97, and despite the later enactment of Senate Bill No. 1559, argue that the administrative fee does not apply to them for the 1990-1991 and 1992 fiscal years. We review the later enacted Senate Bill No. 1559 and its effect on this petition.

a. *Senate Bill No. 1559: Legislative Findings and Declarations*

Section 1 of Senate Bill No. 1559 states: "The Legislature finds and declares all of the following:

"(a) There were a number of ambiguities and technical errors in Chapter 466 of the Statutes of 1990.

"(b) These ambiguities, errors, and the intent of Chapter 466 of the Statutes of 1990 were enumerated in a letter by Senator Maddy dated August 31, 1990, that was printed in the Senate Journal.

"(c) The use of prior year, actual property tax administrative cost data is an efficient, fair, and verifiable means of estimating and apportioning current year property tax costs among the various local entities.

"(d) The enactment of this statute is intended to clarify and correct the ambiguities and errors contained in Chapter 466 of the Statutes of 1990, and to provide the courts with a clear understanding of the scope and intent of Chapter 466 of the Statutes of 1990, which have been challenged in order to allow these lawsuits to be expeditiously resolved."[2]

---

[2]The letter from Senator Kenneth L. Maddy to which this initial section of the statute referred appears in the Journal of the Senate, 1989-1990, volume 5, pages 8463-8465. The letter's first paragraph states: "Because of the complexity of the Budget Act of 1990 and the necessity of swiftly enacting a package of 20 bills to implement the budget, several inadvertent errors and ambiguities were included in my Senate Bill 2557 (Ch. 466 Stats. 1990). The

### b. *Community Redevelopment Agencies*

Section 14 of chapter 697 amended section 97.5 of the Revenue and Taxation Code to include community redevelopment agencies and to subject them to the apportionment of property tax revenues as stated in subdivision (d)(1) and (2):

"Notwithstanding any other provision of law, for the 1990-91 fiscal year and each fiscal year thereafter, the auditor shall divide the sum of the amounts calculated with respect to each jurisdiction or *community redevelopment agency* pursuant to Sections 97, 98.6, and 98.9, and Section 33670 of the Health and Safety Code, by the countywide total of those calculated amounts. The resulting ratio shall be known as the 'administrative cost apportionment factor' and shall be multiplied by the sum of the property tax

following is a listing of these errors and a clear statement of the intent regarding each issue. The intent presented accurately reflects the understanding of the leadership of both houses of the Legislature and the Governor. This document is intended to provide direction and guidance to the Office of the State Controller and to counties and cities and counties in their preparation for the imposition of these fees."

The portion under the heading, "Property Tax Administration Fee" states: "Section 4 of the bill authorizes counties to charge a fee to other local jurisdictions for the actual costs of administration of the property tax system. It was intended that this fee be imposed on cities, special districts, redevelopment agencies, schools, county superintendents of schools, and community colleges. Inadvertently, the bill did not specifically identify each of these entities, because they were thought to be included in the term 'local jurisdiction'. This phrase is not consistent with the terminology of the Revenue and Taxation Code and each of the entities should have been separately identified.

"It was also the intent that the fees for cities, redevelopment agencies, and special districts be withheld from the respective shares of the property tax of each of these entities. Because of the construction of this language as a one-time transfer of property tax to counties and cities and counties and its placement in Section 97, cities, redevelopment agencies, and special districts could, in future years, pay more than the actual cost of property tax administration. This was not intended.

"The reduction of property tax revenues to no- and low-property tax cities might have the effect of increasing the amount of the tax equity allocation to these jurisdictions. This was not intended.

"The bill intended that school districts, community college districts, and county superintendents of schools be mandated to pay their respective shares of the cost of property tax administration. Counties and cities and counties would present invoices to these entities for the appropriate amounts. These invoices would be due and payable within 30 days. The bill creates an ambiguity with regard to this obligation by the use of the word 'may' in Section 97(f) of the Revenue and Taxation Code.

"The use of an invoicing process with respect to school entities was intended to ensure that the property tax administration fee would not be construed as a reallocation of property tax revenues or as a transfer of financial or program responsibility. Finally, it was intended that the mandatory imposition of these fees on schools, community colleges, and county superintendents of schools should supersede any contradictory but previously enacted statutes.

"It was also intended that the counties and cities and counties not be allowed to claim as property tax administration costs any such costs for which they were already being reimbursed. Language indicating this intent was not included in the bill."

administrative costs incurred in the immediately preceding fiscal year by the assessor, tax collector, and auditor to determine the fiscal year property tax administrative costs proportionately attributable to each jurisdiction or *community redevelopment agency*. For purposes of this paragraph, property tax administrative costs shall also include applicable administrative overhead costs allowed by the federal Office of Management and Budget Circular A-87 standards, but shall not include any amount reimbursed pursuant to Sections 75.60 and 98.6, or include any reimbursed pursuant to Sections 75.60 and 98.6, or include any amount in excess of the amounts reimbursable pursuant to Section 75.60, unless a county meets the conditions of paragraph (2) of subdivision (b) of Section 75.60.

"(2) Each proportionate share of property tax administrative costs determined pursuant to paragraph (1), except for those proportionate shares determined with respect to a school entity, shall be deducted from the property tax revenue allocation of the relevant jurisdiction or *community redevelopment agency*, and shall be added to the property tax revenue allocation of the county. For purposes of applying this paragraph for the 1990-91 fiscal year, each proportionate share of property tax administrative costs shall be deducted from those amounts allocated to the relevant jurisdiction or *community redevelopment agency* after January 1, 1991." (Italics added.)

### c. *Retroactivity*

 Petitioners argue that the 1992 amendments show that the Legislature intended to make those amendments applicable only beginning in the 1992-1993 fiscal year.

Petitioners cite part (7) of subdivision (d) of Revenue and Taxation Code section 97.5: "Commencing with the 1992-93 fiscal year and each fiscal year thereafter, this subdivision shall supersede and replace subdivisions (e), (f), and (g) of Section 97, as that section read on January 1, 1992, as authority for a county to recover property tax administrative costs." Petitioners argue that by making community redevelopment agencies subject to a deduction of their proportionate share of property tax administrative costs from the property tax allocation, section 97.5, subdivision (d)(1) and (2) made a change of wording that reflects the Legislature's intent to subject redevelopment agencies to the administrative fee only prospectively, not retroactively.

Petitioners argue that changed statutory language reflects an intent to change the law, and that the fact of a substantial amendment shows the intent

to change the meaning of the enactment rather than to interpret it. Petitioners cite *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228-229 [111 Cal.Rptr. 398], and *People* v. *Santa Fe Federal S. & L. Assn.* (1946) 28 Cal.2d 675, 685 [171 P.2d 713].

These rules, however, apply only where the Legislature has not set forth expressly its intention that a statute will apply prospectively or retroactively. ▮ The rule that the Legislature is presumed to intend prospective operation should not be followed in complete disregard of factors giving a clue to legislative intent. Instead, it is to be applied only where it is impossible to determine the Legislature's intent. (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)

A statute will not be retroactively applied unless the Legislature clearly intended it to be retroactive. The requirement of legislative intent for retroactivity, however, does not apply to an amendment that merely clarifies existing law. (*Bowen* v. *Board of Retirement* (1986) 42 Cal.3d 572, 575 [229 Cal.Rptr. 814, 724 P.2d 500].)

▮▬▮▮ This case presents the recitations in Senator Maddy's August 31, 1990, letter,[3] its incorporation into the Senate bill's legislative findings and declarations, and the Legislature's statement that "[t]he enactment of this statute is intended to clarify and correct the ambiguities and errors contained in Chapter 466 of the Statutes of 1990, and to provide the courts with a clear understanding of the scope of Chapter 466 of the Statutes of 1990." An express declaration that the Legislature intended a statute to be applied retroactively is not required. (*Fox* v. *Alexis* (1985) 38 Cal.3d 621, 629 [214 Cal.Rptr. 132, 699 P.2d 309].) In this case, however, we have just such an express declaration. Combined with statutory language, these materials make it difficult to see how the Legislature could have indicated any more plainly that it intended to clarify rather than change its enactment.

We therefore interpret the statute to apply retroactively. The part of the legislative findings and declarations just quoted, for instance, explains that the 1992 amendments intended to clarify the "the scope" of the 1990 statute. Revenue and Taxation Code section 97.5, subdivision (d)(1), begins, "Notwithstanding any other provision of law, *for the 1990-91 fiscal year and each*

---

[3]A resolution incorporating a legislator's letter concerning the intent of the Legislature gives evidence of more than the personal understanding of the letter's author, and casts light on an amendment's legislative history. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856].) In the case at bench, not only did the Legislature resolve to publish Senator Maddy's letter in its journal, as occurred in *Bouquet*, but it incorporated the letter into a later statute, Senate Bill No. 1559.

*fiscal year thereafter . . . .*" (Italics added.) Subdivision (d)(2) of section 97.5 provides that the proportionate share of property tax administrative costs determined pursuant to paragraph (1) shall be deducted from the property tax revenue allocation of the relevant jurisdiction or community redevelopment agency and added to the county's property tax revenue allocation. That paragraph concludes: *"For purposes of applying this paragraph for the 1990-91 fiscal year,* each proportionate share of property tax administrative costs shall be deducted from those amounts allocated to the relevant jurisdiction or community redevelopment agency after January 1, 1991." (Italics added.) Such specificity concerning the dates and applicability of the statutes supports the conclusion that the Legislature intended Senate Bill No. 1559 to apply retroactively.[4]

### DISPOSITION

The petition for writ of mandate is denied. Costs are awarded to respondents.

Klein, P. J., and Croskey, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 26, 1993.

---

[4]Petitioners cite paragraph (7) of subdivision (d) to support their assertion that the subdivision applies only beginning in the 1992-1993 fiscal year. Paragraph (7) states: "Commencing with the 1992-93 fiscal year and each fiscal year thereafter, this subdivision shall supersede and replace subdivisions (e), (f), and (g) of Section 97, as that section read on January 1, 1992, as authority for a county to recover property tax administrative costs." We take this to mean that the amendments, including subdivision (d), shall supersede and replace section 97, subdivisions (e), (f), and (g) beginning in fiscal year 1992-1993. Subdivision (d) of section 97.5, however, itself states in the two places quoted, *ante,* that it applies to the 1990-1991 fiscal year. Hence we find no merit to this argument.