ORDER
 

 KARLTON, Chief Judge Emeritus.
 

 This matter is before me upon further briefing ordered by the court after ruling on a portion of defendant’s motion to dismiss. Based on the pleadings and papers on file, the court disposes of the matters remaining herein.
 
 See
 
 Local Rule 230(h).
 

 I.
 

 PLEADINGS AND PROCEDURAL HISTORY
 

 Plaintiff, Leo Francis Ortland, filed this civil rights complaint against the County of Tehama (the “County”) and John Charles Williams. His second amended complaint asserts claims against the County for,
 
 inter alia,
 
 negligence, negligent infliction of emotional distress, and violation of plaintiffs civil rights as defined and protected under state law. It alleges that plaintiff was the
 
 *1468
 
 victim of various crimes committed by defendant Williams and that the County failed to adequately investigate Williams’ conduct or otherwise protect plaintiff against him. It further alleges that the County’s District Attorney, Dan Irving, told defendant Williams that plaintiffs homosexuality justified commission of the alleged crimes.
 

 The County moved to dismiss the state law based claims premised on an asserted absence of duty to the plaintiff, discretionary immunity, and immunity for law enforcement judgments.
 
 [1]
 
 The court has previously denied defendant’s motion as to plaintiffs claims for negligence and negligent infliction of emotional distress, insofar as those claims were based upon nondiscretionary conduct which increased the risk of harm to plaintiff. In doing so, the court reasoned that the alleged statements by the district attorney supported claims based upon negligence to the extent that they asserted that although the district attorney did not intend that Williams injure plaintiff, a reasonable person would have known they would create an unreasonable risk that Williams would cause further harm to plaintiff.
 

 Since plaintiff did not join the District Attorney in the action, the court ordered the parties to brief the effect of CaLGov’t Code § 815.3(a) on plaintiffs claim that the district attorney discriminated against him on the basis of sexual orientation.
 
 [2]
 
 Specifically, the court requested the parties to address whether, to the extent that the claim is based directly under the California Constitution and that constitution is self-executing, the legislature can condition a right to suit brought directly under it and, if so, whether it did so in section 815.3. Second, assuming that the answer is yes, the court asked whether discrimination based on sexual orientation is an intentional tort within the meaning of section 815.3(a).
 

 II.
 

 RESOLVING QUESTIONS OF STATE LAW
 

 Because the questions the court must consider in this opinion are questions of state law, it is first necessary to establish the guidelines employed by district courts in resolving such questions. Under
 
 Erie R.R. v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court is bound by the pronouncements of the California Supreme Court,
 
 see Minnesota ex rel. Pearson v. Probate Court,
 
 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940), and if the California Supreme Court has not spoken directly to the issue, I then look to California Courts of Appeal decisions as “data for determining how the highest California Court would rule.”
 
 Scandinavian Airlines System v. United Aircraft Corp.,
 
 601 F.2d 425, 427 (9th Cir. 1979). Thus, in the absence of other evidence, state Courts of Appeal decisions cannot be ignored,
 
 see West v. AT & T Co.,
 
 311 U.S. 223, 236-37, 61 S.Ct. 179, 183-84, 85 L.Ed. 139 (1940); nonetheless, when confronted with an appellate decision which potentially conflicts with California Supreme Court precedent, I cannot simply adopt the appellate decision, but must first determine how the California Supreme Court would view that decision in light of the established precedent.
 
 Id.
 
 at 237, 61 S.Ct. at 183-84.
 

 The problem faced by federal courts in resolving questions of California law is compounded by the state judiciary’s decision-making process. I have previously noted the relative weakness of the doctrine of
 
 stare decisis
 
 in California jurisprudence,
 
 see Froyd v. Cook,
 
 681 F.Supp. 669, 672 n. 9 (E.D.Cal. 1988). There, after examining the status of the doctrine within the state, I observed that a “federal district court need give no greater weight to intermediate appellate decisions than the superior courts of the state do.”
 
 Id.
 

 
 *1469
 
 III.
 

 CALIFORNIA’S EQUAL PROTECTION CLAUSE
 

 Before resolving the question of whether the legislature can condition a constitutional right to suit, the court must consider whether plaintiff can bring his discrimination claim directly under the Equal Protection Clause of the California Constitution. Neither the parties nor the court have found California Supreme Court authority directly on point. In a recent decision, a state court of appeal has held that the California Constitution’s Equal Protection Clause, Art. 1 § 7(a), is not self-executing and therefore does not provide plaintiff with a basis to sue for money damages directly under the constitution.
 
 See Gates v. Superior Court,
 
 32 Cal.App.4th 481, 38 Cal.Rptr.2d 489 (1995). There is, however, tension between
 
 Gates
 
 and a long line of previous California Supreme Court eases indicating that violations of constitutionally guaranteed rights give rise to a cause of action.
 
 See Gantt v. Sentry Insurance,
 
 1 Cal.4th 1083, 1093, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992);
 
 James v. Marinship Corp.,
 
 25 Cal.2d 721, 740, 155 P.2d 329 (1944);
 
 Williams v. Int. Brotherhood of Boilermakers,
 
 27 Cal.2d 586, 590, 165 P.2d 903 (1946);
 
 Safeway Stores v. Retail Clerks etc.6 Assn.,
 
 41 Cal.2d 567, 574, 261 P.2d 721 (1953). It is fair to say that the resolution of the question tendered hinges upon an interpretation of a complex area of state law, which, as I now explain, it appears this court ought to avoid resolving.
 
 [3]
 

 This court’s jurisdiction over plaintiffs state law claim of discrimination exists by virtue of 28 U.S.C. § 1367, which provides the district court with discretion to decline jurisdiction over claims that involve complex issues of state law.
 
 [4]
 
 The uncertainty generated by
 
 Gates
 
 as to whether the Equal Protection Clause of the California Constitution is self-executing suggests that it is appropriate to decline supplemental jurisdiction over plaintiffs discrimination claim insofar as it is brought directly under the California Constitution. This conclusion is supported by the principle, well established in California jurisprudence, that constitutional questions should not be resolved where other grounds are available and dispositive.
 
 See Santa Clara County Local Transportation Authority v. Guardino,
 
 11 Cal.4th 220, 230, 45 Cal.Rptr.2d 207, 902 P.2d 225 (1995);
 
 see also People v. Williams,
 
 16 Cal.3d 663, 667, 128 Cal.Rptr. 888, 547 P.2d 1000 (1976) (noting courts should not reach constitutional questions unless absolutely required). Because I determine below that plaintiff may maintain a claim for discrimination in violation of state common law,
 
 see infra,
 
 it is both inappropriate and unnecessary for the court to determine the constitutional question.
 
 [5]
 
 As I do not reach the constitutional question, I also need not consider the question of whether the state legislature can condition a right to suit brought directly under the California Constitution.
 

 
 *1470
 
 IV.
 

 STATE COMMON LAW AND THE UNRUH ACT
 

 In this case the court earlier assumed, without deciding, that plaintiff could not bring his claim for money damages under the Unruh Civil Rights Act because it applies only to businesses.
 
 See
 
 Cal.Civ.Code §§ 51-52; Order filed December 12,1995 at 6, n. 2.
 
 [6]
 
 Nonetheless, a conclusion that the statute is not directly applicable does not foreclose a determination that it may form the basis for suit under the California doctrine which provides a cause of action for money damages based on tortious conduct that “contravenes the dictates of fundamental public policy.”
 
 See Rojo v. Kliger, 52
 
 Cal.3d 65, 89, 276 Cal.Rptr. 130, 801 P.2d 373 (1990);
 
 see also Schmidt v. Superior Court,
 
 48 Cal.3d 370, 383, 256 Cal.Rptr. 750, 769 P.2d 932 (1989) (noting that “Unruh Act unquestionably embodies a fundamental public policy in this state”).
 
 [7]
 
 Because the Unruh Act prohibits violence or intimidation based on a person’s sexual orientation,
 
 see
 
 Cal.Civ.Code § 51.7,1 conclude that it provides plaintiff with a basis for pleading a cause of action for a violation of public policy.
 

 I must next address whether a common law cause of action premised on the Unruh Act’s public policy permits plaintiff to base his discrimination claim on negligence. If so, then plaintiffs action may not be governed by the joinder requirements of Cal. Gov’t Code § 815.3, which addresses intentional torts.
 

 Because it is the public policy embodied in the Unruh Act which gives rise to the common law claim, it should follow that the claim is restricted to that mode of discrimination denounced by the Act. I thus turn to the Act to determine whether it addresses intentional or negligent conduct.
 

 The language of the Unruh Act does not resolve the question of the form of discrimination it addresses. The California Supreme Court, however, has done so. That court has specifically held “that a plaintiff seeking to establish a ease under the Unruh Act must plead and prove
 
 intentional
 
 discrimination in public accommodations in violation of the terms of the Act.”
 
 Harris v. Capital Growth Investors XIV, 52
 
 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (emphasis added).
 
 Harris
 
 is of course dispositive of the issue. Thus, while plaintiffs separate causes of action for negligence and negligent infliction of emotional distress can be maintained free from the strictures of Cal.Gov’t Code § 815.3, his claim for discrimination in violation of his civil rights must be categorized as an intentional tort for purposes of section 815.3.
 

 V.
 

 APPLICATION OF CAL. GOV’T CODE § 815.3
 

 California Government Code section 815 provides the statutory basis for government tort liability for money damages. This liability “is subject to any immunity ... provided by statute.” Cal.Gov’t Code § 815(b). Section 815.2 specifically addresses the government’s general tort liability for injuries caused by an act or omission of an employee within the scope of his employment. Section 815.3 in turn conditions the right to bring an action for damages against a public entity for intentional tort violations upon naming as defendant in the action the elected official alleged to have perpetrated the tort. Since I concluded above that plaintiff was required to prove discriminatory intent, as a matter of textual analysis § 815.3 applies to plaintiffs state discrimination claims for money damages brought against a public entity involving an elected official.
 

 
 *1471
 
 Plaintiff contends that section 815.3 is inapplicable because it conflicts with the liability imposed under the Unruh Act. As I explained above, however, plaintiff cannot bring his action directly under the Unruh Act, but rather employs that act’s embodiment of public policy as a basis for common law tort responsibility. Thus, to the extent that plaintiff argues that there is a conflict between the provision of the Unruh Act and section 815.3, the argument is unavailing since his suit does not arise directly under the Act. Accordingly, I need not resolve the difficult question of when immunities created by the Tort Claims Act apply to liability imposed by statutes other than the Tort Claims Act.
 
 [8]
 

 Plaintiff also contends that Cal.Gov’t Code § 815.3 is impermissible retroactive legislation. The Governor approved the statute on September 25, 1994, and the law went into effect on January 1, 1995. Although plaintiff commenced his civil action 46 days later on February 15, 1995,
 
 see
 
 Fed.R.Civ.P. 3; Cal.Civ.Proc.Code § 350 (providing that civil action is commenced with filing of complaint), all the events complained of occurred before the enactment of § 815.3.
 

 Defendant’s first response is to deny that the statute is retroactive. Its contention that the rule against retroactivity only concerns legislation enacted after commencement of suit does not lie; rather, the issue of retroactivity addresses the effect of statutes on preexistent conduct whenever suit has been filed.
 
 See Russell v. Superior Court,
 
 185 Cal.App.3d 810, 821, 230 Cal.Rptr. 102 (1986) (holding that statute in issue there did not apply to “causes of action which accrued prior to its effective date”). All the events alleged in plaintiffs complaint occurred prior to the statute’s enactment on January 1, 1995, and thus, § 815.3, if applicable to the instant ease, is retroactive in effect.
 

 Generally, statutes are presumed to operate prospectively.
 
 See United States v. Schooner Peggy,
 
 1 Cranch 103, 110, 2 L.Ed. 49 (1801). “This long established presumption applies particularly to laws creating new obligations, imposing new duties, or exacting new penalties because of past transactions.”
 
 In re Marriage of Reuling,
 
 23 Cal.App.4th 1428, 1439, 28 Cal.Rptr.2d 726 (1994);
 
 see also Aetna Casualty & Surety Co. v. Ind. Acc. Com.,
 
 30 Cal.2d 388, 182 P.2d 159 (1947) (declaring retroactive statute which “affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute”). As with any presumptive rule of construction, the presumption here acts as a default rule applicable in the absence of evidence of legislative intent.
 
 See Russell v. Superior Court,
 
 185 Cal.App.3d 810, 230 Cal.Rptr. 102 (1986);
 
 Arcadia Redevelopment Agency v. Ikemoto,
 
 16 Cal.App.4th 444, 20 Cal.Rptr.2d 112 (1993) (applying presumption only where impossible to determine legislative intent);
 
 but see Evangelatos v. Superior Court,
 
 44 Cal.3d 1188, 1208-09, 753 P.2d 585 (1988) (applying presumption absent clear legislative statement).
 

 There is no indication in the statute or legislative history that the legislature intended Cal.Gov’t Code § 815.3 to apply retroactively. The statute does not include an express provision of retroactivity, nor do the provisions suggest or imply retroactive intent. Moreover, the statute’s legislative history, contained in a short, two paragraph preamble, provides no indication, expressed or clearly implied, that the section should apply retroactively.
 

 Although statutes generally are not applied retroactively unless the legislature clearly indicates otherwise,
 
 see California Country Club Homes Assn. v. City of Los Angeles,
 
 18 Cal.App.4th 1425, 22 Cal.Rptr.2d 917 (1993), there are two types of legislation
 
 *1472
 
 where the rule against retroactive legislation is inapplicable. The first is where the statute is an amendment that clarifies existing law.
 
 Arcadia,
 
 16 Cal.App.4th at 458, 20 Cal. Rptr .2d 112. The second pertains to procedural statutes which have no effect on substantive rights or liabilities.
 
 Id.
 

 The first exception plainly does not apply to the matter at bar. Section 815.3 is an entirely new provision added in 1995 to California’s broad legislative scheme conditioning government liability for money damages.
 
 See
 
 Cal.Gov’t Code §§ 814-825. Article 2, entitled “Liability of Public Entities,” Cal. Gov’t Code §§ 815-818, includes a general provision for governmental liability and general immunity, followed by various sections and subsections providing liability and immunity for specific causes of action, § 815.3 being one such provision.
 

 In cases involving elected officials, § 815.3 “enaet[s] special provisions” that differ from those under § 815.2.
 
 See
 
 1994 CaLLegis.Serv., Ch. 796, A.B. No. 2508 (West). Section 815.2, the older, more general statute, imposes vicarious liability upon public entities “for the tortious acts and omissions of their employees,” including elected officials, unless the employee is otherwise immune from suit.
 
 See
 
 Cal.Gov’t Code § 815.2 Legis. Comm. Comment — Senate (1963). Under § 815.2, it is unnecessary in every case to identify, much less join, the particular employee in the complaint. Section 815.3, on the other hand, “requires joinder of the elected official in order to pursue a cause of action against the public entity involved.”
 
 See
 
 Cal. Leg. Service, Ch. 796, A.B. No. 2508. In addition, § 815.3 shifts the liability from the public entity to the elected official in instances of sexual harassment and other tortious acts committed outside the scope of employment. Finally, under § 815.3, the injured party must first seek recovery of the judgment from the assets of the elected official before seeking recovery from the public official.
 
 Id.
 
 Given all the above, it is clear that § 815.3 does not fall within the category of statutes which merely clarify existing law.
 

 I next address defendant’s contention that § 815.3 is a purely procedural statute enacted prior to commencement of the suit for which the general rule against retroactivity does not apply.
 
 See Aetna,
 
 30 Cal.2d at 394, 182 P.2d 159 (citing
 
 Morris v. Pacific Electric Co.,
 
 2 Cal.2d 764, 768, 43 P.2d 276 (1935) (such legislation “operate[s] on existing causes of action and defenses” and only when and if the procedure is invoked)). For the reasons explained below, I cannot agree.
 

 Because procedural changes often directly affect settled expectations, characterizing the statute as either procedural or substantive is generally viewed by California courts as insignificant.
 
 See Borden v. Division of Medical Quality,
 
 30 Cal.App.4th 874, 880, 35 Cal.Rptr.2d 905 (1994);
 
 see also Aetna,
 
 30 Cal.2d at 394, 182 P.2d 159;
 
 but see Governing Board v. Comm’n on Prof. Competence,
 
 171 Cal.App.3d 324, 334, 217 Cal. Rptr. 457 (1985). Rather, the critical determination is said to be whether a change in law alters the legal effect of past events.
 
 See Borden,
 
 30 Cal.App.4th at 880, 35 Cal.Rptr.2d 905 (citing
 
 Aetna,
 
 30 Cal.2d at 394, 182 P.2d 159);
 
 see also In re Cindy B.,
 
 192 Cal.App.3d 771, 778-79, 237 Cal.Rptr. 677 (1987).
 
 [9]
 

 It is true that in some ways § 815.3 appears to focus only on proper parties. First, its requirement that plaintiff name the elected official in the complaint becomes applicable only when and if an action is brought. Moreover, it does not diminish or extinguish an existing cause of action and at least textu
 
 *1473
 
 ally it does not alter the amount recoverable. Finally, while the statute shifts liability for intentional torts committed outside the scope of employment to the elected official, it still requires a public entity to pay damages in the event that the elected official’s assets are insufficient.
 
 See
 
 Cal.Gov’t Code § 815.3(e). Nonetheless, it appears relatively clear to this court that the superficial resemblances to procedural rules are significantly outweighed by the impact the provision has upon the liability of the elected official.
 
 [10]
 

 Section 815.3 is far more than a mere joinder provision. The statute changes existing law by shifting liability for certain tortious acts from the public entity to the elected official. The naming requirement implements the legislative determination to hold elected officials personally liable for intentional torts committed outside the scope of their employment. In such instances § 815.3 significantly impacts the substantive rights of the elected official in that it deprives that defendant of a prior immunity defense when the tortious conduct is deemed outside the scope of employment. “[T]he legislature may not, under pretense of regulating procedure or rules of evidence, deprive a party of a substantive right, such as a good cause of action or an absolute or a substantial defense which existed theretofore.”
 
 Morris v. Pacific Elect. Ry. Co.,
 
 2 Cal.2d 764, 768, 43 P.2d 276 (1935).
 

 The joinder requirement also has an effect on plaintiffs substantive rights to the extent that a failure to name the official prohibits suit against the public entity altogether.
 
 See White v. Western Title Ins. Co.,
 
 40 Cal.3d 870, 884, 221 Cal.Rptr. 509, 710 P.2d 309 (1985) (noting presumption against retroactivity “particularly applicable to a statute which diminishes or extinguishes an existing cause of action”);
 
 Aetna,
 
 30 Cal.2d at 394, 182 P.2d 159 (citations omitted). Section 815.3 completely precludes plaintiffs cause of action for discrimination in violation of state law where he has failed to join the errant official, a condition which did not exist prior to the statute’s passage. Finally, as I explain below, the statute may, as a practical matter, affect the amount of damages actually recoverable, and certainly increases significantly a plaintiffs burden in collecting a judgment. These consequences contraindicate retroactivity.
 

 While it is true that the statute requires the public entity to pay any judgment which plaintiff cannot recover directly from the elected official, and that it does not purport to reduce the potential amount of recovery, it does make an elected official personally liable for tortious acts if the trier of fact determines that the act “did not arise from and was not directly related to the elected official’s” duties.
 
 See
 
 Cal.Gov’t Code § 815.3(c). It is not unlikely that a jury, in calculating the amount of damages will be influenced by the fact that § 815.3, unlike § 815.2, holds the individual rather than the public entity liable. Even of more consequence, however, plaintiffs will be required to pursue different methods of recovery.
 

 The new statute requires that the public entity pay the plaintiff directly any amount which the court determines cannot be satisfied out of the guilty official’s assets. Thus, plaintiff will be required to demonstrate that recovery cannot be directly obtained from the elected official. Under the old law once a judgment became final, a public entity paid without further collection efforts on the part of the plaintiff. Collection from the private resources of individuals follows no such easy path.
 

 Rule 69 of the Federal Rules of Civil Procedure requires that, except as otherwise provided by statute, district courts follow state practice regarding the collection and enforcement of judgments. Prior to the enactment of § 815.3, an injured party could rely on the provisions of Cal.Gov’t Code §§ 970
 
 et seq.
 
 to satisfy the final judgment. Under those provisions, the local public entity is required to pay any final judgment, with
 
 *1474
 
 interest, during the fiscal year out of unappropriated and unrestricted funds, or funds appropriated for the purpose.
 
 See
 
 Cal.Gov’t Code § 970.4. If funds are unavailable, the judgment shall be paid, with interest, either during the following year or in installments.
 
 See
 
 Cal.Gov’t Code §§ 970.5, 970.6, 984, and 985.
 
 [11]
 

 By virtue of § 815.3, collection becomes both more difficult and less certain. Under the statute it appears that plaintiffs will be required to exhaust the various devices for satisfaction before turning to the public entity. Thus, they will be required to undertake orders of examination to determine what assets the judgment debtor possesses,
 
 see
 
 Cal. Civ.Proc.Code § 708.110
 
 et seq.,
 
 they may be required to garnish property,
 
 see
 
 Cal.Civ. Proc.Code § 695.010
 
 et seq.,
 
 file attachment suits to set aside fraudulent transfers,
 
 see
 
 Cal.Civ.Proc.Code § 491.340, a creditor’s suit to acquire property or debt controlled by a third person,
 
 see
 
 Cal.Civ.Proc.Code § 708.210, and/or a contempt proceeding against the elected official, Cal.Civ.Proc.Code § 717.010. In short, shifting liability to the elected official as provided under § 815.3 requires the injured party to pursue more laborious, complex and less secure methods of recovery, and in this regard the statute changes “the legal effect of past transactions, rights and obligations.”
 
 Russell,
 
 185 Cal. App.3d at 816,230 Cai.Rptr. 102.
 

 Indeed, the change in the allocation of liability suffices to require prospective application. In
 
 Russell v. Superior Court, supra,
 
 the court held that a change from joint and several liability to several liability in the Fair Responsibility Act of 1986 “worked a ‘modification of liability,’ changing the legal effect of past transactions, rights and obligations,” because it increased the likelihood that the prevailing plaintiff would receive less damages under the Act than plaintiff would have before the amendment.
 
 Id.
 
 at 816, 230 Cal. Rptr. 102. The court contrasted the Fair Responsibility Act to statutes involving rules of evidence, rules of service of process, and awards of costs or attorney fees upon entry of the judgment, which it opined were classes of statutes not governed by the presumption against retroactivity. It concluded that the Act was of a different character and subject to the nonretroaetivity rule because it “affectfed] substantive rights by diminishing an individual defendant’s total liability for a major item of awardable damages.”
 
 Id.
 
 Such is the case here.
 

 For the foregoing reasons, this court finds that § 815.3 represents new law that operates to substantively change the legal effect of past events. Accordingly, § 815.3 is inapplicable to the present case as retroactive legislation.
 

 YI.
 

 ORDER
 

 For all the reasons stated above, defendant’s motion to dismiss plaintiffs claim for discrimination in violation of state law civil rights is DENIED insofar as plaintiff is alleging intentional discrimination in violation of the public policy created by the Unruh Act.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Alternatively, the defendant moved for a more definite statement.
 

 [2]
 

 . Section 815.3(a) provides:
 

 ... unless the elected official and the public entity are named as codefendants in the same action, a public entity is not liable ... [when the] act or omission constitutes an intentional tort, including but not limited to, harassment, sexual battery, and intentional infliction of emotional distress. For purposes of this section, harassment in violation of state or federal law constitutes an intentional tort, to the extent permitted by federal law. This section shall not apply to defamation.
 

 Cal.Gov’t Code § 815.3(a).
 

 [3]
 

 .
 
 Gates
 
 premises its decision on the absence of historical evidence that there was an intent to provide tort liability for a violation of the California Constitution’s Equal Protection Clause, a condition apparently indistinguishable from those provisions which the California Supreme Court has held provide tort relief. Moreover, the
 
 Gates
 
 analysis appears to ask the wrong question since it is premised on confusion between the means of construing a constitutional provision and the quite separate question of whether under California law its constitutional provisions are self-executing. Whether on full analysis these preliminary observations would prove accurate need not detain the court for the reasons explained in the text.
 

 [4]
 

 . The statute provides in pertinent part:
 

 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
 

 (1) the claim raises a novel or complex issue of State law, ...
 

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 

 28 U.S.C. § 1367(c)(1) and (4).
 

 [5]
 

 . Plaintiff’s second amended complaint does not specifically allege a violation of the California Constitution, but more generally claims a violation of civil rights as protected under state law. Since plaintiff can make such a claim under the state's common law,
 
 see
 
 text
 
 infra,
 
 declining to consider the constitutional question does not compromise plaintiff’s pleadings.
 

 [6]
 

 . I also assume, without deciding, that plaintiff could not sue under the Fair Employment and Housing Act because it applies to discrimination arising in an employment or housing context.
 
 See
 
 Cal.Gov’t Code §§ 12940 and 12955.
 

 [7]
 

 . For federal district courts which lack general common law duties, the power of California courts to create common law torts founded on a statute’s embodiment of public policy without reference to notions of implied rights of action may be quite disconcerting, but it is a mode of proceeding quite familiar in state practice.
 
 See
 
 Roger J. Traynor,
 
 Statutes Revolving in Common Law Orbits,
 
 43 State Bar Journal 509, 531 (1968).
 

 [8]
 

 . California’s courts of appeal may be viewed as in disagreement as to whether the tort claims statute's immunities are limitations on suits premised on liability imposed by statutes other than the Tort Claims Act.
 
 Compare Gates,
 
 32 Cal.App.4th at 510, 38 Cal.Rptr.2d 489 ("the general rule is that governmental immunity will override a liability created by a statute outside the Tort Claims Act.”),
 
 with Duarte v. City of San Jose,
 
 100 Cal.App.3d 648, 656, 161 Cal.Rptr. 140 (1980) (when conflict exists between liability imposed by statute other than Tort Claims Act and immunity provided by act, court must determine whether the liabilities imposed by statute “serve a purpose that is frustrated by an immunity”).
 

 [9]
 

 . Indeed, if this court were to adopt defendant’s position that § 815.3 was purely procedural, it is arguable that I would not be obligated to apply the statute to the matter at bar since
 
 Erie R.R. v. Tompkins
 
 only requires application of a state's substantive law, while permitting the federal district courts to apply federal procedure unless outcome determinative.
 
 See, e.g., Byrd v. Blue Ridge Rural Elect. Co-op,
 
 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). This distinction demonstrates the difficulty with defendant’s argument. In essence the line between retroactive and prospective application of statutes parallels the line between application of state substantive law and federal procedure. To the extent the statute is outcome determinative it affects substantive rights, and thus generally must be applied by this court under
 
 Erie’s
 
 general principle, but for that very reason cannot be applied to the matter at bar under California's retroactivity rule.
 

 [10]
 

 . It is appropriate for the court to consider the impact of § 815.3 upon elected officials even though the accused elected official is not yet a party to this action. Plaintiff has standing to raise the retroactivity of § 815.3, and in resolving the issue the court of necessity must determine whether the statute, taken as a whole, affects substantive rights, regardless of whether the official is a party to the litigation.
 

 [11]
 

 . Throughout the process the injured party retains the right to bring an enforcement action on the judgment.
 
 See
 
 Cal.Civ.Proc.Code § 683.050;
 
 Pratali v. Gates, 4
 
 Cal.App.4th 632, 637, 5 Cal. Rptr.2d 733 (1992).