[No. C025631. Third Dist. July 27, 2000.]

CITY OF EL MONTE et al., Plaintiffs and Appellants, v.
COMMISSION ON STATE MANDATES, Defendant and Respondent;
DEPARTMENT OF FINANCE, Real Party in Interest and Respondent.

**COUNSEL**

Law Offices of William D. Ross, William D. Ross, Carol B. Sherman and J. Robert Flandrick for Plaintiffs and Appellants.

Gary D. Hori and Camille Shelton for Defendant and Respondent.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Linda A. Cabatic and Pete Southworth, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**SCOTLAND, P. J.**—In this appeal from the trial court's denial of a petition for writ of administrative mandate, we are called upon to determine whether legislation requiring local redevelopment agencies to contribute to a local Educational Revenue Augmentation Fund (ERAF) constituted a reimbursable state mandate under article XIII B, section 6 of California's Constitution.

As we shall explain, we agree with the trial court that the legislation did not constitute a reimbursable state mandate and that plaintiffs were accorded a fair hearing before the Commission on State Mandates. Accordingly, we shall affirm the judgment.

### BACKGROUND

The Legislature has "found and declared that there exist in many communities blighted areas which constitute physical and economic liabilities, requiring redevelopment in the interest of the health, safety, and general welfare of the people of these communities and of the state." (Health & Saf. Code, § 33030.) Thus, it is the policy of our state to utilize all appropriate means to promote the sound development and redevelopment of blighted areas. (Health & Saf. Code, § 33037.) To that end, the Legislature enacted the Community Redevelopment Law. (Health & Saf. Code, § 33000 et seq.)

The redevelopment process begins when a community forms a redevelopment agency and, after appropriate proceedings, designates an area as a redevelopment or project area. (See *Bell Community Redevelopment Agency v. Woosley* (1985) 169 Cal.App.3d 24, 27 [214 Cal.Rptr. 788].) The agency then must formulate a redevelopment plan that is adopted by the local government body. (*Ibid.*) The agency has broad powers to implement the redevelopment plan, but lacks the authority to impose a tax to finance its efforts. (*Ibid.*) In this respect, a redevelopment agency is permitted to accept financial or other assistance from any public or private source, may borrow money, and may issue bonds. (*Ibid.*; Health & Saf. Code, §§ 33600-33602.)

The most important method of financing employed by a redevelopment agency is what is known as tax increment financing. (See Health & Saf.

Code, § 33670 et seq.) This method of financing is explicitly authorized by article XVI, section 16 of our state Constitution. Tax increment financing presupposes that redevelopment will increase property values, and hence increase the tax base, of properties in the project area. Pursuant to a tax increment financing plan, the taxing agencies that are entitled to an allocation of taxes paid upon properties in a redevelopment area continue to receive an allocation based upon the assessment roll last equalized prior to the effective date of the ordinance approving the redevelopment plan. (Cal. Const., art. XVI, § 16, subd. (a).) Tax receipts in excess of that amount are paid into a special fund of the redevelopment agency for the payment of "the principal of and interest on loans, moneys advanced to, or indebtedness (whether funded, refunded, assumed or otherwise) incurred by the redevelopment agency to finance or refinance, in whole or in part, the redevelopment project." (Cal. Const., art. XVI, § 16, subd. (b).) In other words, the taxing agency receives the same amount of money it would have received under the assessed valuation of the project area in the absence of redevelopment, and the redevelopment agency receives the increment attributable to new construction and revitalization. (*Bell Community Redevelopment Agency v. Woosley, supra*, 169 Cal.App.3d at p. 27.)

The Community Redevelopment Law and tax increment financing have long been a part of California law. (*Brown v. Community Redevelopment Agency* (1985) 168 Cal.App.3d 1014, 1017 [214 Cal.Rptr. 626].) However, some uncertainty with respect to redevelopment agencies and tax increment financing arose as the result of the addition of articles XIII A and XIII B to our state Constitution, and their failure to specifically address community redevelopment. (*Bell Community Redevelopment Agency v. Woosley, supra*, 169 Cal.App.3d at p. 29.)

California Constitution, article XIII A, added in 1978 and familiarly known as Proposition 13, imposes taxing limitations upon local governments. In addition to limiting property taxes to one percent of full market value, "to be collected by the counties and apportioned according to law to the districts within the counties," article XIII A imposes a requirement of a two-thirds majority vote for the imposition of special taxes. (Cal. Const., art. XIII A, §§ 1, subd. (a), 4.) ■ Article XIII A does not preclude a local government from imposing or raising special taxes, but the supermajority vote requirement makes it more difficult to do so. (*Huntington Park Redevelopment Agency v. Martin* (1985) 38 Cal.3d 100, 105 [211 Cal.Rptr. 133, 695 P.2d 220].) This was intended to inhibit a local government from avoiding property tax limitations by shifting the tax burden to other forms of tax. (*Ibid.*)

California Constitution, article XIII B, added in 1979, imposes government spending limitations upon the state and local governments. With respect to local governments, the limitation is accomplished by restricting total annual appropriations to the appropriations limit for the prior year, adjusted for the change in the cost of living and the change in population, except as otherwise provided in that article. (Cal. Const., art. XIII B, § 1.) The essential thrust of article XIII B is to prohibit a government entity from spending more on programs funded with taxes than it spent in the prior year, adjusted for inflation and population changes. (*Huntington Park Redevelopment Agency v. Martin, supra*, 38 Cal.3d at p. 107.) In view of the local tax limitations imposed by article XIII A and the spending limitations imposed upon local governments by article XIII B, article XIII B includes section 6 which, with certain exceptions, requires the state to provide a subvention of funds for the costs of any new program or higher level of service imposed upon local governments by the Legislature or any state agency. (*County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 61 [233 Cal.Rptr. 38, 729 P.2d 202].)

In view of the uncertainty with respect to tax increment financing after the addition of articles XIII A and XIII B to our state Constitution, the Legislature enacted Health and Safety Code section 33678 as urgency legislation. (added by Stats. 1980, ch. 1342, § 1, pp. 4750-4751, eff. Sept. 30, 1980; amended by Stats. 1993, ch. 942, § 35, pp. 5380-5381.) Subdivision (a) of that section provides: "This section implements and fulfills the intent of this article and of Article XIII B and Section 16 of Article XVI of the California Constitution. The allocation and payment to an agency of the portion of taxes specified in subdivision (b) of Section 33670 [the tax increment] for the purpose of paying principal of, or interest on, loans, advances, or indebtedness incurred for redevelopment activity, as defined in subdivision (b) of this section, shall not be deemed the receipt by an agency of proceeds of taxes levied by or on behalf of the agency within the meaning or for the purposes of Article XIII B of the California Constitution, nor shall such portion of taxes be deemed receipt of proceeds of taxes by, or an appropriation subject to limitation of, any other public body within the meaning or for purposes of Article XIII B of the California Constitution or any statutory provision enacted in implementation of Article XIII B. The allocation and payment to an agency of this portion of taxes shall not be deemed the appropriation by a redevelopment agency of proceeds of taxes levied by or on behalf of a redevelopment agency within the meaning or for purposes of Article XIII B of the California Constitution."

■ The constitutional validity of Health and Safety Code section 33678 was considered in *Brown v. Community Redevelopment Agency, supra*, 168

Cal.App.3d 1014. There, it was contended that funds received by a redevelopment agency pursuant to a tax increment funding plan are "proceeds of taxes" subject to the appropriations limit of California Constitution, article XIII B. (168 Cal.App.3d at p. 1018.) The Court of Appeal disagreed, finding article XIII B to be vague and uncertain with respect to tax increment financing, and finding the legislative clarification in Health and Safety Code section 33678 to be neither arbitrary and unreasonable, nor repugnant to the literal language of article XIII B. (168 Cal.App.3d at p. 1020.) The same conclusion was reached by another Court of Appeal in a virtually contemporaneous decision. (*Bell Community Redevelopment Agency v. Woosley, supra,* 169 Cal.App.3d at pp. 33-34; see also *Redevelopment Agency v. Commission on State Mandates* (1997) 55 Cal.App.4th 976, 987 [64 Cal.Rptr.2d 270].)

It was upon this background that, in 1992, the Legislature enacted what the parties refer to as the ERAF legislation. (Stats. 1992, chs. 699, 700, pp. 3081-3125.) ERAF stands for Educational Revenue Augmentation Fund. The ERAF legislation, which was enacted in response to a shortfall in state revenues and a period of severe fiscal difficulty brought about by the well-known economic recession of that time period (Stats. 1992, ch. 699, § 36, p. 3114; Stats. 1992, ch. 700, pp. 3081-3125, § 5, p. 3125), affected local government entities, including redevelopment agencies. Because the dispute in this case involves only the effect of the ERAF legislation on redevelopment agencies, we shall confine our discussion of it to redevelopment agencies.

In chapter 699, the ERAF legislation amended Health and Safety Code section 33020 to include, in the definition of "redevelopment," payments to school and community college districts in the 1992-1993 fiscal year. (Stats. 1992, ch. 699, § 3, p. 3084.) Health and Safety Code section 33681 was enacted to require a redevelopment agency to make certain payments to local school and community college districts. (Stats. 1992, ch. 699, § 7, pp. 3087-3089.) This version of Health and Safety Code section 33681, which was superseded before it became operative, would have required redevelopment agencies to pay an amount equal to 15 percent of all taxes allocated to it during the 1992-1993 fiscal year, less applicable credits, to each school and community college district that is an affected taxing entity of the agency. (Stats. 1992, ch. 699, § 7, pp. 3087-3089.)[1] Section 33683 was added to the Health and Safety Code to provide that sums paid pursuant to

---

[1] In support of this provision, the Legislature enacted Health and Safety Code section 33680, which contains certain findings and declarations. (Stats. 1992, ch. 699, § 7, pp. 3086-3087.) Among other things, the Legislature found that the purposes of the Community

the ERAF legislation with property tax revenues are to be deducted from the property tax dollars deemed to have been received by the agency for purposes of determining whether the tax allocation and financing limitations in the redevelopment plan (Health & Saf. Code, §§ 33333.2, 33333.4), or pursuant to any agreement or court order, have been reached (Stats. 1992, ch. 699, § 7, pp. 3089-3090).

In chapter 699, the ERAF legislation also enacted Revenue and Taxation Code section 97.03, dealing with the allocation of property tax revenues. (Stats. 1992, ch. 699, § 12, pp. 3093-3096.)[2] In relevant part, in subdivision (d), that provision established in each county an ERAF into which certain tax receipts would be paid and then allocated to school and community college districts in the county.

In chapter 700, the ERAF legislation enacted a different version of Health and Safety Code section 33681, which superseded the one enacted in chapter 699. (Stats. 1992, ch. 700, § 1.5, pp. 3115-3116.) The new version provided a formula for determining a redevelopment agency's contribution to schools and community college districts and provided for deposit of such contributions into the county ERAF fund established pursuant to Revenue and Taxation Code section 97.03. The measure includes subdivision (c), which provides: "In order to make the allocation required by this section, an agency may use any funds that are legally available and not legally obligated for other uses, including, but not limited to, reserve funds, proceeds of land sales, proceeds of bonds or other indebtedness, lease revenues, interest, and other earned income. No moneys held in a low- and moderate-income fund as of July 1, 1992, may be used for this purpose." (Stats. 1992, ch. 700, § 1.5, p. 3116.) Subdivision (e) declares such sums to be an indebtedness of the redevelopment project to which they relate, payable through tax increment financing. (Stats. 1992, ch. 700, § 1.5, p. 3116.) This version of section 33681 added subdivision (f) to provide: "It is the intent of the Legislature, in enacting this section, that these allocations directly or indirectly assist in the

Redevelopment Law are dependent upon an adequate and financially solvent school system, that redevelopment agencies historically have provided financial assistance to schools which benefit and serve the project area, that the reduced funds available to the state made it necessary for redevelopment agencies to provide additional assistance to schools, and that the payments to be made to schools and community college districts are of benefit to redevelopment project areas.

[2]Property taxes are collected by counties and then apportioned and disbursed pursuant to legislative formulae. (Cal. Const., art. XIII A, § 1; Rev. & Tax. Code, § 95 et seq.; see *Bell Community Redevelopment Agency v. Woosley, supra,* 169 Cal.App.3d at p. 32.)

financing or refinancing, in whole or in part, of the community's redevelopment projects pursuant to Section 16 of Article XVI of the California Constitution."[3]

The effect of the 1992 ERAF legislation was to require redevelopment agencies to make a payment into the county ERAF fund for distribution to local school and community college districts. The City of El Monte Community Redevelopment Agency claims that, pursuant to the 1992 ERAF legislation, it was required to allocate $118,138.57 for that purpose. The City of El Monte asserts that, as a result of an agency shortfall, it was required to lend funds to the agency for payment of its ERAF contributions.[4] Pursuant to Government Code procedures (§ 17500 et seq.), El Monte filed test claim No. CSM-4439 with the Commission on State Mandates (the Commission), seeking state reimbursement for these costs.

In 1993, while claim No. CSM-4439 was pending, the Legislature enacted additional ERAF legislation. (Stats. 1993, chs. 68, 566, pp. 939-955, 2812-2814.) The effect of the 1993 ERAF legislation was to require a redevelopment agency to make payments into the county ERAF fund during the 1993-1994 and 1994-1995 fiscal years. (Stats. 1993, ch. 68, §§ 1, 2, 4, pp. 940-944, amending Health & Saf. Code, §§ 33020, 33680, and adding § 33681.5.)[5] El Monte filed test claim No. CSM-4465, asserting that it had incurred state-mandated costs in the amount of $34,638.52 for the 1993-1994 fiscal year as the result of the 1993 ERAF legislation.

The Commission adopted a lengthy decision denying claim No. CSM-4439. It subsequently adopted a decision denying claim No. CSM-4465 on the same grounds. In denying the claims, the Commission concluded (1) the ERAF legislation did not impose a new program or higher level of service on redevelopment agencies; (2) tax increment revenues are not "proceeds of taxes" within the meaning of article XIII B, section 6 of the Constitution, and the provisions of article XIII B, including section 6, are not applicable to

---

[3]Chapter 700 included a new and superseding version of Revenue and Taxation Code section 97.03. (Stats. 1992, ch. 700, § 4, pp. 3120-3125.) With respect to redevelopment agencies, the new version was identical to the version in chapter 699.

[4]Although the ERAF legislation also required cities, counties, and other taxing entities to contribute to the local ERAF fund, the City of El Monte does not contest any direct effect upon it in this proceeding. The City of El Monte joins this litigation solely by reason of the loan of funds to its redevelopment agency. For convenience, we will adopt the nomenclature of the appellants and refer to them collectively as El Monte.

[5]In chapter 566, the 1993 ERAF legislation added section 33681.3 to the Health and Safety Code to provide an equitable adjustment for certain redevelopment agencies for their payments during the 1992-1993 fiscal year. (Stats. 1993, ch. 566, § 1, p. 2812.) This provision is beneficial to the agencies that qualify and is not at issue here.

tax increment financing; (3) the payments to an ERAF fund by redevelopment agencies represent an allocation of funds among local government entities rather than a shift in costs from the state to a local entity, and the decision in *Lucia Mar Unified School Dist. v. Honig* (1988) 44 Cal.3d 830 [244 Cal.Rptr. 677, 750 P.2d 318] is inapplicable because in this instance long-standing educational responsibilities remain with local school districts; and (4) the ERAF legislation does not impose reimbursable costs on a redevelopment agency because, pursuant to Health and Safety Code section 33683 (Stats. 1992, ch. 699, § 7, pp. 3089-3090), the agency may recoup its costs by excluding such payments from its tax receipt and financing limitations.

El Monte petitioned for a writ of administrative mandate. (Code Civ. Proc., § 1094.5; Gov. Code, § 17559.) The trial court upheld the Commission's decision. The court rejected El Monte's procedural attacks upon the Commission proceedings, holding El Monte had failed to substantiate that it was denied a fair hearing or otherwise prejudiced by an irregularity. With respect to the substantive claim, the court found dispositive the Commission's conclusion that the ERAF legislation represented an allocation of taxes among local entities rather than a shift of state responsibilities to local agencies. Judgment was entered denying the petition for a writ of mandate.

DISCUSSION

I

*State Mandate*

Before considering El Monte's substantive contentions, it will be useful to identify certain matters that are not in issue.

First, El Monte notes that in the Commission proceedings the Department of Education admitted that payments to county ERAF funds were distributed to local school and community college districts with an equal reduction of state payments to those districts. This factual admission is consistent with the ERAF legislation. In enacting this legislation, the Legislature specified that it was dealing with a current shortfall in state revenues and a period of severe fiscal difficulty. (Stats. 1992, ch. 699, § 36, p. 3114; Stats. 1992, ch. 700, § 5, p. 3125.) In support of the ERAF legislation, the Legislature adopted Health and Safety Code section 33680, subdivision (c), which provides among other things: "[B]ecause of the reduced funds available to the state to assist schools and community colleges which benefit and serve redevelopment project areas during the 1992-93 fiscal year, it is necessary

for redevelopment agencies to make additional payments to assist the programs and operations of these schools and colleges in order to ensure that the objectives stated in this section can be met." (Stats. 1992, ch. 669, § 7, p. 3087.) It is undeniable that a purpose behind the ERAF legislation was to compel redevelopment agencies to provide support for schools and community colleges during a period when the state was unable to adequately provide such support. However, the validity of the state's reduction of its payments to school districts is not in issue. El Monte lacks standing to complain of the state's reduced payments to schools. (*County of Los Angeles v. Sasaki* (1994) 23 Cal.App.4th 1442, 1449 [29 Cal.Rptr.2d 103].) Moreover, article XVI, sections 8 and 8.5 of our state Constitution, added by Proposition 98 at the November 1988 General Election, upon which El Monte places heavy reliance, recognizes the historical fluidity of the fiscal relationship between local governments and schools, which we will discuss, *post.* Accordingly, the fact that the ERAF legislation was accompanied by a reduction of state payments to local school and community college districts is not dispositive.

Second, we are not here concerned with the validity of the ERAF legislation. As noted previously, the Legislature made certain findings and declarations in support of this legislation. (See p. 272, fn. 1, *ante.*) The Legislature found that it is appropriate for redevelopment agencies to provide assistance to local schools and community colleges, that such support serves the purposes of community redevelopment, and that such assistance may properly be treated as indebtedness payable through tax increment financing within the meaning of article XVI, section 16 of our state Constitution. (Health & Saf. Code, § 33680.) El Monte does not challenge the validity of those determinations or of the ERAF legislation. In fact, El Monte emphasizes that the validity of the legislation is not in issue. ■ The sole issue presented with respect to the ERAF legislation is whether the compelled contributions constitute a state mandate for which a subvention of funds is required pursuant to article XIII B, section 6 of the Constitution.

Third, we are not concerned with the Legislature's determination, embodied in Health and Safety Code section 33678, that redevelopment agencies and tax increment financing pursuant to article XVI, section 16 of the Constitution are not subject to the local government appropriations limitations of article XIII B. As we have noted, that determination has been upheld in the Courts of Appeal. (*Bell Community Redevelopment Agency v. Woosley, supra,* 169 Cal.App.3d at pp. 33-34; *Brown v. Community Redevelopment Agency, supra,* 168 Cal.App.3d at p. 1020.) El Monte does not ask us to reject those decisions and find that redevelopment agencies and tax increment financing are in fact subject to the government spending limitations of article XIII B.

El Monte asks only that we find the subvention requirements of section 6 of article XIII B of the California Constitution are applicable in this instance.

California Constitution, article XIII B, section 6 provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] (a) Legislative mandates requested by the local agency affected; [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; or [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975."

In addressing the meaning and scope of this provision, we do not write on a clean slate; fortunately, we have the benefit of extensive judicial consideration of the matter. When we consider El Monte's claim in light of existing authorities, we are satisfied, on two alternative grounds, that the ERAF legislation did not constitute a reimbursable state mandate with respect to redevelopment agencies. We will discuss these grounds seriatim.

A. *Allocation of Revenues*

A reimbursable state mandate is not commensurate with any "additional costs" that a local government may be required to bear. (*County of Los Angeles v. State of California, supra,* 43 Cal.3d at pp. 55-57.) The additional expense to a local agency arising as an incidental impact of a law that applies generally to all entities is not the type of expense that the voters had in mind when they adopted section 6 of California Constitution, article XIII B. (*Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d at p. 835.)

A reimbursable mandate is created only when the state imposes on a local government a new program or an increased level of service under an existing program. (*Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d at p. 835.)

In *Lucia Mar Unified School Dist. v. Honig,* upon which El Monte places primary reliance, the Legislature had enacted a measure to require local school districts to contribute part of the costs of educating pupils from the district at state schools for the severely handicapped. Before and after the measure, the state retained complete administrative control over the special schools. Before the measure, the state had borne the entire cost of operating

such schools. Under these circumstances, the Supreme Court found that the measure constituted a "new program" within the meaning of the subvention requirement because otherwise the requirement "would plainly be violated if the state could, while retaining administrative control of programs it has supported with state tax money, simply shift the cost of the programs to local government . . . ." (*Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d at p. 836.)[6]

The decision in *Lucia Mar Unified School Dist. v. Honig* turned on the dual factors that (1) before the measure, the state had borne the entire cost of the special schools, and (2) before and after the measure, the state retained administrative control over the special schools. (44 Cal.3d at p. 836, especially fn. 8 [noting the decision involved the "new program" rather than "higher level of service" aspect of the subvention requirement]; see also *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 99, fn. 20 [61 Cal.Rptr.2d 134, 931 P.2d 312].) As will be seen, neither of these factors is applicable in this case.

The matter of funding education is a shared responsibility between state and local taxpayers. (See, e.g., Ed. Code, § 14000.) The division of this responsibility has been in a state of flux since 1971, as the result of certain developments, including the decision in *Serrano v. Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187] holding that equal protection requires equal funding of schools, and the addition to the Constitution of article XIII A limiting local property taxation. (See *California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1526-1527 [7 Cal.Rptr.2d 699]; see also *County of Los Angeles v. Sasaki, supra,* 23 Cal.App.4th at pp. 1450-1452 [noting that by fiscal year 1991-1992, the share of local property tax revenue allocated to K-14 schools had dropped to 35 percent from the 53 percent that it had been in the 1977-1978 fiscal year (at p. 1452)].)

Nevertheless, it is clear that, before the enactment of the ERAF legislation, a substantial, although variable, portion of local property tax revenues were utilized for the support of schools. In this respect, a utilization of local property taxes in support of schools and community colleges is not a "new program" within the meaning of the decision in *Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d 830.

El Monte cites *Butt v. State of California* (1992) 4 Cal.4th 668, 681 [15 Cal.Rptr.2d 480, 842 P.2d 1240] for the proposition that education is the

---

[6]In *Lucia Mar Unified School Dist. v. Honig,* the Supreme Court did not decide that the measure constituted a reimbursable state mandate. The possible existence of reasonable alternatives to the use of state-operated schools left open the question whether the contributions were mandated, and the court deferred to the Commission for resolution of that issue. (*Lucia Mar, supra,* 44 Cal.3d at pp. 836-837.)

ultimate responsibility of the state. The principle is undeniable, and indeed this court has noted and relied upon the state's plenary authority over education. (*California Teachers Assn. v. Hayes, supra,* 5 Cal.App.4th at pp. 1524-1525.) However, that principle does not resolve the issue presented in this case. (See *City of San Jose v. State of California* (1996) 45 Cal.App.4th 1802, 1814-1815 [53 Cal.Rptr.2d 521].)

Only the state is sovereign and, in a broad sense, all local governments, districts, and the like are subdivisions of the state. (*Allied Amusement Co. v. Bryam* (1927) 201 Cal. 316, 320 [256 P. 1097]; *Petition East Fruitvale Sanitary Dist.* (1910) 158 Cal. 453, 457 [111 P. 368].) However, it is the State of California's policy to provide for the maximum feasible degree of local autonomy. (See Cal. Const., art. XI.) Thus, the Legislature has established a policy of providing, to the extent feasible, autonomy for local school districts. (Ed. Code, § 14000; see *Butt v. State of California, supra,* 4 Cal.4th at p. 681.) And for a variety of purposes, school districts have been held to be separate political entities rather than "the state." (*Butt v. State of California, supra,* at p. 681.)

Any doubt with respect to the "local government" status of school districts under California Constitution, article XIII B is resolved by the article itself, which provides that, for its purposes, " 'Local government' means any city, county, city and county, school district, special district, authority, or other political subdivision of or within the State." (Cal. Const., art. XIII B, § 8, subd. (d).) For purposes of article XIII B, school districts are local government and not the state.

Since neither of the determinative factors in *Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d 830, is present here, that decision is not controlling. This, of course, does not resolve the question whether the ERAF legislation constitutes a reimbursable mandate; it merely means that *Lucia Mar Unified School Dist. v. Honig* does not provide the answer.

The answer, we conclude, is in the decision of *City of San Jose v. State of California, supra,* 45 Cal.App.4th 1802.

*City of San Jose v. State of California* involved a claim that legislation authorizing counties to charge cities and other local governments for the costs of booking arrestees into the county jail constituted a reimbursable state mandate. The Court of Appeal rejected a contention that counties should be considered to be agents of the state and said: "Thus for purposes of subvention analysis, it is clear that counties and cities were intended to be treated alike as part of 'local government'; both are considered local agencies or political subdivisions of the State. Nothing in article XIII B prohibits

the shifting of costs between local governmental entities." (*City of San Jose v. State of California, supra,* 45 Cal.App.4th at p. 1815.)

The ERAF legislation was, in part, an exercise of the Legislature's authority to apportion property tax revenues. (*San Miguel Consolidated Fire Protection Dist. v. Davis* (1994) 25 Cal.App.4th 134, 148-149 [30 Cal.Rptr.2d 343].) It was merely the most recent adjustment in the historical fluidity of the fiscal relationship between local governments and schools. (*County of Los Angeles v. Sasaki, supra,* 23 Cal.App.4th at p. 1457.)[7]

Pursuant to the decision in *City of San Jose v. State of California, supra,* 45 Cal.App.4th 1802, the shift of a portion of redevelopment agency funds to local schools did not create a reimbursable state mandate.

### B. *Applicability of Article XIII B, Section 6 to Redevelopment Agencies*

We find a second and alternative ground for concluding that the ERAF legislation did not impose a reimbursable state mandate on redevelopment agencies.

In *County of Fresno v. State of California* (1991) 53 Cal.3d 482 [280 Cal.Rptr. 92, 808 P.2d 235], the Supreme Court held that the subvention requirement of California Constitution, article XIII B, section 6 must be read in light of its textual and historical context and that, when so considered, subvention is required only when the costs in question can be recovered solely from tax revenues, i.e., "proceeds of taxes." (53 Cal.3d at pp. 486-487; Cal. Const., art. XIII B, § 8, subd. (c).)[8]

In the ERAF legislation, however, the Legislature provided that a redevelopment agency's obligations for the local ERAF fund could be paid from

---

[7]The decisions in *San Miguel Consolidated Fire Protection Dist. v. Davis, supra,* 25 Cal.App.4th 134, and *County of Los Angeles v. Sasaki, supra,* 23 Cal.App.4th 1442, upheld the ERAF legislation against a variety of legal attacks. However, those decisions did not involve redevelopment agencies and tax increment financing peculiar to those agencies, and did not involve the question whether the ERAF legislation could constitute a reimbursable state mandate. Consequently, those decisions are not dispositive of issues presented here.

[8]El Monte has asked us to take judicial notice of certain materials, including (1) the California ballot pamphlet for the November 6, 1979, Special Election, at which article XIII B was added to the Constitution, and (2) excerpts of the Journal of the Assembly for the 1975-1976 Regular Session, concerning statutory reimbursement provisions that preceded the addition of article XIII B to the Constitution. (Rev. & Tax. Code, former §§ 2207, 2231.) These materials are submitted in support of El Monte's claim that reimbursement is required for any costs a local government incurs as the result of state action. In *County of Los Angeles v. State of California, supra,* 43 Cal.3d at pages 55 to 57, the Supreme Court considered the preexisting statutory scheme but nevertheless concluded that the constitutional subvention requirement is not implicated whenever any additional costs are imposed on a local government. In *County of Fresno v. State of California, supra,* 53 Cal.3d at pages 486 and 487, the

any legally available source, including the tax increment payable to the agency under Health and Safety Code section 33670 and article XVI, section 16 of California's Constitution. Pursuant to Health and Safety Code section 33678, an agency's tax increment may not be deemed to be the proceeds of taxes within the meaning of article XIII B.

It follows that the ERAF legislation did not impose costs on redevelopment agencies that can be recovered solely from tax revenues within the meaning of California Constitution, article XIII B and thus, under the reasoning of *County of Fresno v. State of California, supra*, 53 Cal.3d at pages 486-487, the ERAF legislation did not impose a reimbursable state mandate.

Our conclusion is consistent with the holding in *Redevelopment Agency v. Commission on State Mandates, supra*, 55 Cal.App.4th 976. In that case, a redevelopment agency claimed the legislative requirement that a portion of its tax increment be placed into a low- and moderate income housing fund constituted a reimbursable state mandate. The agency maintained that, although it was exempt from the appropriation limits of California Constitution, article XIII B, it nevertheless was entitled to claim reimbursement for state-mandated costs pursuant to that article. The Court of Appeal disagreed, concluding the same policies which support exempting tax increment financing from the appropriations limits of article XIII B also support denying reimbursement pursuant to section 6 of that article. (55 Cal.App.4th at p. 987.)

Under the narrow scope in which El Monte pursues this litigation, we find the reasoning of the decision in *Redevelopment Agency v. Commission on State Mandates, supra*, 55 Cal.App.4th at page 987, to be compelled by the Supreme Court's decision in *County of Fresno v. State of California, supra*, 53 Cal.3d at pages 486 through 487. El Monte does not challenge the validity of Health and Safety Code section 33678, which precludes a redevelopment agency's tax increment from being considered to be the proceeds of taxes for purposes of California Constitution, article XIII B. Absent a successful challenge to that legislative determination, the decision in *County of Fresno v. State of California* forecloses a reimbursable mandate. In other words, a redevelopment agency cannot accept the benefits of Health and

---

Supreme Court held that the constitutional provision requires a subvention only when the costs imposed can be recovered solely through tax revenues. Under principles of stare decisis, we are bound by those authorities. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, we deny the request for judicial notice.

Safety Code section 33678 while asserting an entitlement to reimbursement under article XIII B, section 6.

C.  *Summary*

For these two, alternative reasons, we agree with the Commission and the trial court that the ERAF legislation did not impose a reimbursable state mandate upon redevelopment agencies.[9]

II

*Procedural Issues*

El Monte argues the Commission's decision fails to meet the requirements of *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], which held that an adjudicative decision by an administrative agency must set forth findings to bridge the analytic gap between the raw evidence and the ultimate decision or order. (*Id.* at p. 515.) However, as we have noted (see fn. 9, *ante*), the two bases for decision we have discussed present pure questions of law, to be resolved upon existing statutory, constitutional, and decisional authorities. The Commission's decision fully discussed the issues and its resolution of them, and was sufficient under the decision in *Topanga Assn. for a Scenic Community v. County of Los Angeles*.

El Monte complains the Commission failed to hear El Monte's claim within a reasonable time, as required by Government Code section 17555 as it then read (Stats. 1984, ch. 1459, § 1, p. 5118), and California Code of Regulations, title 2, section 1187.1. El Monte also complains the Commission accepted position papers from the Department of Finance, over El Monte's objection that the papers were submitted late and were not properly served upon it. The Commission declined to strike the Department of Finance's submissions, reasoning that the submissions consisted of legal arguments rather than factual assertions; the Commission already was familiar with the legal arguments presented; and El Monte in fact obtained copies of the submissions and was able to respond.

We agree with the trial court that El Monte has failed to show cognizable prejudice with respect to these assertions. The issue presented is one of law

---

[9]Unlike these reasons, which are pure questions of law, the third basis relied upon by the Commission, i.e., that the ERAF legislation provided a means of recoupment, can involve certain factual considerations. (See *County of Fresno v. State of California, supra,* 53 Cal.3d at p. 487 [sufficiency of recoupment alternatives was at issue]; *Lucia Mar Unified School Dist. v. Honig, supra,* 44 Cal.3d at p. 837 [reasonableness of alternatives was at issue].) We need not, and do not, address the third ground relied upon by the Commission.

not fact. We cannot assume the Commission would have reached an erroneous legal conclusion in the absence of the errors asserted by El Monte, and we cannot base a finding of prejudice upon the possibility the Commission would have reached an erroneous legal conclusion. To the contrary, we must affirm, regardless of procedural errors, if the decision was the legally correct resolution of the case. (Cal. Const., art. VI, § 13; *Conservatorship of Fadley* (1984) 159 Cal.App.3d 440, 442, 446-447 [205 Cal.Rptr. 572]; *Stafford v. People* (1956) 144 Cal.App.2d 79, 81 [300 P.2d 231].)[10]

DISPOSITION

The judgment is affirmed.

Davis, J., and Morrison, J., concurred.

A petition for a rehearing was denied August 23, 2000, and appellants' petition for review by the Supreme Court was denied November 1, 2000. Kennard, J., was of the opinion that the petition should be granted.

---

[10]El Monte's claims of prejudice concern the burdens of bearing unreimbursed contributions to the county ERAF fund, and the difficulties in making financial projections and budget decisions prior to obtaining a decision on its claims. We recognize, as did the Commission, the frustration procedural delays may cause. However, since the Commission reached the legally correct decision, the asserted errors did not prejudice El Monte with respect to the only matter at issue here, the reimbursability of its ERAF contributions. In that sense, El Monte has failed to establish cognizable prejudice.