Filed 7/31/23  California School Boards Association v. Cohen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA SCHOOL BOARDS ASSOCIATION et al., | C096838 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 34-2021-80003680-CU-WM-GDS) |
| MALIA M. COHEN, as Controller, etc., | |
| Defendant and Respondent; | |
| COUNTY OF SANTA CLARA et al., | |
| Interveners and Respondents. | |

After the Department of Finance (Finance) issued guidance stating that charter school average daily attendance must be included when making certain calculations related to an Educational Revenue Augmentation Fund (ERAF), the California State Controller (Controller), charged by the Legislature with issuing guidance on the subject (Rev. & Tax. Code, § 97.2, subd. (d)(2)(B)), stated that under the relevant statutes,

1

charter schools are not included in the definition of school districts for the calculation of excess ERAF.

The California School Boards Association and its Education Legal Alliance (the Association) filed a petition for writ of mandate and complaint for declaratory and injunctive relief (petition and complaint) in the trial court, challenging the Controller's guidance. The County of Santa Clara, County of Marin, and City and County of San Francisco intervened as real parties in interest. The trial court denied the Association's requested relief and entered judgment against the Association.

The Association now challenges the trial court's decision. Because the Revenue and Taxation Code statutes do not specifically mention charter schools in discussing the calculation or allocation of excess ERAF, the Association urges us to look to the Education Code for such a connection. The Association further contends the Controller's guidance is contrary to the Legislature's intent to shift a greater portion of public school funding from the state General Fund to local property tax revenues, and the guidance lowers the constitutional funding guarantee for schools.

The Association has not shown that charter schools must be included in the calculation or allocation of excess ERAF. Accordingly, we will affirm the judgment.

BACKGROUND

Public school financing in California is a shared responsibility between state and local taxpayers subject to the legal developments described in *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231 and *County of Sonoma v. Commission on State Mandates* (2000) 84 Cal.App.4th 1264. (*California Redevelopment Assn.,* at pp. 242-250; *County of Sonoma,* at pp. 1271-1276, 1287; *City of El Monte v. Commission on State Mandates* (2000) 83 Cal.App.4th 266, 278.) Proposition 13 changed the state's property tax system in 1978 by capping ad valorem real property taxes at 1 percent of the full cash value of the property, limiting the ability of local governments to raise funds to finance public schools. (Cal. Const., art. XIII A, § 1, subd. (a) [added by Proposition 13];

2

*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 218-220; *County of Sonoma,* at pp. 1271-1273.) Proposition 98 established a constitutional minimum funding level for public schools in 1988 and required the state to designate a portion of the state General Fund for public schools. (Cal. Const. art XVI, § 8; *California Redevelopment Assn.,* at p. 245.) In response to a fiscal crisis, legislation in 1992 shifted property tax revenues from counties, cities and special districts to ERAFs to help the state meet its financial obligation under Proposition 98. (Stats. 1992, ch. 699, § 12, pp. 3093-3096; Stats. 1992, ch. 700, § 4, pp. 3120-3125; *California Redevelopment Assn.,* at p. 245; *North Sonoma Coast Fire Protection Dist. v. Roeser* (2022) 74 Cal.App.5th 267, 270-274; *City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1039.) The amounts deposited in ERAFs are deemed part of the state's General Fund for purposes of satisfying the state's Proposition 98 obligation. (*California Redevelopment Assn.,* at p. 245; *North Sonoma Coast Fire Protection Dist.,* at pp. 273-274.) Additional ERAF legislation was also enacted. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 714; *Los Angeles Unified School Dist. v. County of Los Angeles* (2010) 181 Cal.App.4th 414, 420-421 (*Los Angeles Unified School Dist.*); see, e.g., Rev. & Tax. Code, §§ 97.3, 97.71, 97.72, 97.73.)

Revenue and Taxation Code section 97.2, subdivision (d)(2) and (3) provide for ERAF allocation to certain school districts, county offices of education, and community college districts. If after making the specified allocations there are still additional funds to be allocated, ERAF funds are allocated to the county superintendent of schools for special education programs. (Rev. & Tax. Code, § 97.2, subd. (d)(4)(B)(i)(I)-(II).) Any ERAF funds remaining thereafter are allocated to the county, cities, and special districts. (Rev. & Tax. Code, §§ 97.2, subd. (d)(4)(B)(i)(III), 97.3, subd. (d)(4)(B)(i)(III).) The Controller refers to the funds allocated to the county, cities, and special districts as excess ERAF. We do the same.

Finance issued guidance stating: "State law provides for charter schools to receive a proportionate share of the property tax revenue collected in the jurisdiction of their sponsoring school districts, including ERAF (Education Code [section] 47635). There is nothing in current law that excludes charter schools from the K-12 ERAF allocation calculations. If the state had intended for charter schools to not receive ERAF, conforming language would have been added to Revenue and Taxation Code section 97 et seq. and to the relevant Education Code sections. Thus, charter school [average daily attendance] must be included when calculating excess ERAF."[1] Counties with excess ERAF, including the County of Santa Clara, County of Marin, and City and County of San Francisco, objected to the Finance guidance.

The Legislative Analyst's Office (LAO) also issued a report on the subject. Among other things, the LAO expressed concern that some counties were increasing excess ERAF by excluding charter schools from excess ERAF calculations. The LAO report said "the law requires school districts to share their property tax revenue -- including ERAF -- by making payments in-lieu of taxes to their charter schools." The LAO added: "State law specifically allocates ERAF and other property tax revenue to charter schools through their school districts. This property tax revenue offsets the General Fund revenue charter schools otherwise would receive from the state. The counties' approach, however, would involve calculating excess ERAF as though these parts of the allocation process did not exist. The overall effect would be to reduce the amount of ERAF revenue available for allocation to the school districts in the county.

---

[1] On appeal, the Association refers to the Finance guidance and the Legislative Analyst's Office report. Copies of those documents were attached as exhibits to the request for judicial notice the Association filed in the trial court. The trial court took judicial notice of the existence of those documents but declined to take judicial notice of the truth of statements contained in them. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.) The Association does not challenge that ruling on appeal.

(Charter schools would experience the reduction indirectly, in the form of smaller payments in-lieu of taxes.)  This approach also runs counter to various state laws declaring charter schools to be school districts for funding purposes such as [the local control funding formula].”

The Legislature subsequently amended Revenue and Taxation Code section 97.2 to require the Controller to issue guidance for the implementation of Revenue and Taxation Code section 97.2, subdivision (d)(2)(A).  (Stats. 2020, ch. 24, § 84 [Rev. & Tax. Code, § 97.2, subd. (d)(2)(B)].)  Effective June 29, 2020, Revenue and Taxation Code section 97.2, subdivision (d)(2)(B) required the Controller to issue, on or before December 31, 2020, guidance about the allocation of ERAF funds to school districts and county offices of education pursuant to Revenue and Taxation Code section 97.2, subdivision (d)(2)(A).  The amendment authorizes a writ of mandate action by the Controller against a county auditor-controller for failure to comply with the Controller’s guidance.  (Rev. & Tax. Code, §§ 22, 97.2, subd. (d)(2)(B).)

Betty Yee, the Controller at the time, issued guidance on February 16, 2021. The guidance instructs county auditors on how to calculate and allocate excess ERAF pursuant to Revenue and Taxation Code sections 97.2, subdivision (d) and 97.3, subdivision (d).  According to the guidance, an auditor first determines the amount of ERAF revenues.  The auditor then deducts the ERAF entitlement for school districts, the county office of education, community college districts, and special education.  The Controller’s guidance states that charter schools are not included in the definition of school districts for the calculation of excess ERAF because charter schools do not directly receive property tax revenue, but instead receive funding in lieu of property taxes from the sponsoring local educational agency.  Finally, according to the guidance, the auditor distributes any excess ERAF funds to cities, the county, and special districts pursuant to Revenue and Taxation Code sections 97.2, subdivision (d)(4)(B)(i)(III) and 97.3, subdivision (d)(4)(B)(i)(III).

The Association filed a petition and complaint in the trial court challenging the Controller's guidance. The Association argued the Controller's guidance violates Revenue and Taxation Code section 97.2 and the minimum funding guarantee in article XVI, section 8, subdivision (b) of the California Constitution. The trial court granted the application by the County of Santa Clara, County of Marin, and City and County of San Francisco to intervene as real parties in interest. Following a hearing, the trial court denied the Association's requested relief and entered judgment against the Association.

DISCUSSION

The Association challenges the trial court's decision, asking us to exercise our independent judgment in reviewing the Controller's guidance and to accord the Controller's interpretation no deference.

At issue in this case is the meaning of Revenue and Taxation Code section 97.2, subdivision (d)(2)(A). Because the Revenue and Taxation Code statutes do not specifically mention charter schools in discussing the calculation or allocation of excess ERAF, the Association urges us to look to the Education Code for such a connection. The Association further contends the Controller's guidance is contrary to the Legislature's intent to shift a greater portion of public school funding from the state General Fund to local property tax revenues, and the guidance lowers the constitutional funding guarantee for schools.

A

Statutory interpretation is a judicial function. (*Bodinson Mfg. Co. v. California Employment Commission* (1941) 17 Cal.2d 321, 326; *City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 44.) Accordingly, our review is de novo. (*Los Angeles Unified School Dist., supra*, 181 Cal.App.4th at p. 424; see *Associated Builders & Contractors, Inc. v. San Francisco Airports Commission* (1999) 21 Cal.4th 352, 361.) "While administrative interpretation of a statutory scheme is entitled to due regard, it is

6

not determinative. . . ." (*City of Scotts Valley,* at p. 44 [refusing to give deference to the State Auditor's report where it was at odds with the statutory language].)

The rules governing statutory construction are well established. " '[O]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. [Citations.]" (*In re C.H.* (2011) 53 Cal.4th 94, 100.)

We also review de novo a claim of constitutional violation. (*Deputy Sheriffs' Assn. of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578; *Herbst v. Swan* (2002) 102 Cal.App.4th 813, 816.)

B

Revenue and Taxation Code section 97.2, subdivision (d)(1) provides that the amount of property tax revenue not allocated to the county, cities within the county, and special districts as a result of certain reductions, shall be deposited in an ERAF and allocated to school districts, county offices of education, and community college districts, in the same proportion that property tax revenues had been distributed to those entities prior to the creation of ERAFs.

Revenue and Taxation Code section 97.2, subdivision (d)(2) provides: "The auditor shall . . . allocate the proportion of the [ERAF] to those school districts and county offices of education within the county that are not excess tax school entities, as defined in subdivision (n) of Section 95." Similarly, Revenue and Taxation Code sections 97.3, subdivision (d) and 97.4, subdivision (b)(1) provide for the allocation of ERAF to school districts, county offices of education and community college districts that are non excess tax school entities. Revenue and Taxation Code section 95,

7

subdivision (n) defines "excess tax school entity" as an educational agency for which the amount of the state funding entitlement is zero due to, among other things, its property tax revenue. (See *Los Angeles Unified School Dist., supra*, 181 Cal.App.4th at p. 420 [non excess tax school entities are entitled to additional revenue from the state General Fund].)[2]

The Revenue and Taxation Code statutes do not specifically mention charter schools in discussing the calculation or allocation of excess ERAF. (Rev. & Tax. Code, §§ 97.2, 97.3, 97.4, 97.71, 97.72, 97.73.) The Association instead points to Education Code provisions stating that a charter school is deemed a school district for purposes of Proposition 98. But as the Association acknowledges, the Legislature determined that charter schools should receive funding in a different way.

Charter schools receive a general-purpose entitlement, which is computed by the formula specified in Education Code section 42238.02 called the local control funding formula (LCFF). (Ed. Code, §§ 47632, subd. (a), 47633; see generally Ed. Code, §§ 47630, 47632, subd. (f), 47651.) The LCFF is calculated each year "for each school district and charter school . . . ."[3] (Ed. Code, § 42238.02, subd. (c).) The general-purpose entitlement is funded from a combination of state aid and local funds. (Ed. Code, § 47633.) A sponsoring local education agency, which may be a school district, must annually transfer to each of its charter schools funding in lieu of property taxes. (Ed. Code, §§ 42238.02, subd. (k), 47635; see Ed. Code, § 47632, subd. (i).)

---

[2] According to the Association, the Education Code addresses which educational agencies have a state funding entitlement of zero, and thus we must consider the Education Code in interpreting section 97.2. But the Association does not establish that charter schools are expressly referenced in the Education Code as non excess tax school entities that must be included in excess ERAF calculation or allocation.

[3] If the Legislature intended school districts and charter schools to be the same under this statutory scheme, the Legislature would not have referenced them separately.

Education Code section 47662, a statute referenced by the Association, provides that under the LCFF scheme, a sponsoring local educational agency's ERAF revenues shall be reduced by the amount of funding in lieu of property taxes allocated to a charter school. Thus, charter school funding impacts a sponsoring local educational agency's ERAF revenue. But this does not clearly establish that charter schools receive ERAF allocations or that they must be included in excess ERAF calculation. The statutory scheme indicates that the Legislature has decided to treat ERAF and charter schools differently. (Rev. & Tax. Code, §§ 96-96.81 [Basic Revenue Allocations], 97-97.81 [Revenue Allocation Shifts for Education]; Ed. Code, §§ 42238.02, subd. (k), 47635, 47662.) Education Code section 47612, subdivision (c), a provision the Association cites, does not pertain to ERAF calculation or allocation.

The Association also contends the Controller's guidance is contrary to the Legislature's intent to shift a greater portion of public school funding from the state General Fund to local property tax revenue. But we decline to modify the express terms of the statutory language in pursuit of underlying policy. (*People v. Hunt* (1999) 74 Cal.App.4th 939, 945-947.)

C

The Association further argues the Controller's guidance lowers the constitutional funding guarantee for schools. The Association acknowledges charter schools did not exist when ERAFs were first established, but it argues there is nothing in the subsequent statutory history indicating a legislative intent to decrease the amount of ERAF funding going to the public school system. The Association references the Declaration of Chris Ferguson, who declared he was a Program Budget Manager at Finance, in support of the

argument that had there been any such legislative intent, the Legislature would have said so expressly.**4**

The Association bears the burden of demonstrating an error that justifies reversal of the judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Even when our review is de novo, the scope of review is limited to issues that have been adequately raised and supported. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Mr. Ferguson's declaration asserts that the Controller's guidance has resulted in lowering the Proposition 98 guarantee in Marin, Napa, Santa Clara, San Francisco and San Mateo counties, but his declaration does not adequately explain his conclusion with supporting citations. For that reason, his declaration does not establish the Association's contention. (See generally *Hoover Community Hotel Development Corp. v. Thomson* (1985) 167 Cal.App.3d 1130, 1137.)

To the extent the Association relies on Mr. Ferguson's declaration to show what the Legislature knew or intended, we do not consider the opinion of a member of the executive branch in determining legislative intent. (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1492-1493; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41-42; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161, fn. 3.)

---

**4** In its guidance, Finance also relied on the absence of express statutory language, stating that because current law does not expressly exclude charter schools from excess ERAF calculation, charter schools must be included in such calculation. We disagree with such an approach and conclude that because current law does not expressly include charter schools in excess ERAF calculation and allocation, the Association has not established Controller or trial court error. In construing statutes we must simply ascertain and declare what is contained therein, not insert what has been omitted or omit what has been inserted. (Code Civ. Proc., § 1858; accord *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633.)

The Association's briefing also does not establish that the Controller's guidance lowers the constitutional funding guarantee for schools.  The funding guarantee remains the same; the Controller's guidance merely addresses one particular source of funding.

DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                             /S/
                                       MAURO, J.


We concur:


    /S/
ROBIE, Acting P. J.


    /S/
KRAUSE, J.